**Marie ROBINSON, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. 85 Civ. 0450 (EW).

United States District Court, S.D. New York.

Jan. 8, 1987.

Westchester Legal Services, Inc., Senior Citizens Law Clinic, White Plains, N.Y., for plaintiff; Marianne Artusio, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Mark S. Sochaczewsky, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Atty.,—Region II, Linda Riffkin, Asst. Regional Atty., Office of the General Counsel, Dept. of Health and Human Services, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Marie Robinson moves for class certification and for summary judgment in her action seeking to invalidate a Social Security Administration ("SSA") regulation which counts, as income, payments from other agencies which are withheld by the agencies to repay prior overpayments.[1] Defendant Otis R. Bowen, Secretary of the Department of Health and Human Services (the "Secretary"), moves for judgment on the pleadings. Both parties agree that

---

1. 20 C.F.R. § 416.1123(b)(1).

there are no factual issues in dispute and the matter is ripe for disposition.

Plaintiff, prior to 1981, was receiving monthly widow's benefits from the Veteran's Administration ("VA"), as a Veteran's Widow. On May 1, 1981, upon reaching age sixty, she additionally became entitled to receive benefits under Title II of the Social Security Act based upon her deceased husband's earning record. Plaintiff failed to report these additional benefits to the VA until November 3, 1981. As a result of this failure, the payment of plaintiff's VA benefits were not reduced as they should have been and she was overpaid VA benefits in the amount of $1536.[2] Plaintiff's request for a waiver of the overpayment was denied by the VA because it was determined there was "material failure" by plaintiff in causing the overpayments.

To recover the overpayment, the VA, beginning in April, 1982, withheld plaintiff's monthly VA payments which were then applied toward satisfaction of the debt. When the recoupment began, plaintiff's monthly benefits were $23; in June 1982 they were increased to $39; they were increased again in January 1984 to $40; and finally, in January 1985 to $42. The total amount due to the VA was fully repaid in October 1985. Commencing in November 1985, the VA sent plaintiff the monthly amount to which she was entitled, and since that time she has been receiving the full amount of her VA benefits without deduction.

In June 1983, plaintiff applied for Supplemental Security Income ("SSI") benefits. This application was denied in September 1983; however, on January 4, 1985, an Administrative Law Judge determined that plaintiff was disabled within the meaning of the Social Security Act and awarded her SSI payments retroactive to the date of her application. Plaintiff's SSI award was computed according to a Social Security Administrative decision to treat plaintiff's withheld VA benefit payments as monthly income under the SSA regulation, 20 C.F.R. § 416.1123(b)(1). This decision was upheld by an Administrative Law Judge and then by the Social Security Appeals Council.

The crux of this controversy centers about whether the VA benefits that were withheld from plaintiff were properly included in computing her income and resources, even though she did not actually receive those payments in hand, for purposes of determining the amount of monthly SSI payments to which she was entitled.

## Discussion

Plaintiff contends that the SSA regulation which provides for including payments withheld as income in computing the amount of her SSI benefits is invalid. She argues that it conflicts with 42 U.S.C. § 1382(a)(2)(B) because payments withheld to repay a prior overpayment are not "payments received" as provided for in the definition of income in that section, and therefore should not be included as income when calculating either SSI eligibility or the amount of benefits. Plaintiff also argues that the regulation violates Congress' intent in enacting 42 U.S.C. § 1383(b)(1)(B), of the Deficit Reduction Act of 1984, which limits the withholding of SSI overpayments to 10 percent of the recipient's total "income" for the month. Finally, plaintiff contends that the regulation violates plaintiff's equal protection rights because there is no rational basis for a scheme in which SSI recipients who have received overpayments of SSI benefits are guaranteed at least 90% of the SSI standard, while SSI recipients who have received overpayments from other agencies are not similarly protected.

SSI eligibility and the amount of SSI benefits are based on a beneficiary's earned and unearned income. Under the Social Security Act:

(2) unearned income means all other income, including—

(A) support and maintenance furnished in cash or kind. . . .

---

**2.** While the VA notified plaintiff that she had been overpaid in the amount of $1536, an Administrative Law Judge found that the overpayment was in the amount of $1500 in a decision dated June 28, 1984. However, this discrepancy is not material to the determination of this action.

(B) any payments *received* as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits;

(C) prizes and awards;

(D) the proceeds of any life insurance policy to the extent that they exceed the amount expended by the beneficiary for purposes of the insured individual's last illness and burial or $1,500, whichever is less;

(E) gifts (cash or otherwise), support and alimony payments, and inheritances; and

(F) rents, dividends, interest, and royalties.[3]

Plaintiff contends that the SSA's regulation defining the amount "considered as income" conflicts with the intent of Congress to count the items listed in § 1382a(a)(2)(B) as income only if they are actually received because withheld payments are not actually received in hand. The regulation at issue, which was promulgated in 1982 in place of a prior regulation, provides in pertinent part:

(b) *Amount considered as income.* We may include more or less of your unearned income than you actually receive.

(1) We include more than you actually receive where another benefit payment (such as a social security insurance benefit) ... has been reduced to recover a previous overpayment. You are repaying a legal obligation through the withholding of portions of your benefit amount, and the amount of your debt reduction is also part of your unearned income. *Exception:* We do not include

more than you actually receive if you received both SSI benefits and the other benefits at the time the overpayment of the other benefit occurred and the overpaid amount was included in figuring your SSI benefit.[4]

The Social Security Act authorizes the Secretary of Health and Human Services to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration" of his functions.[5] Therefore, the initial inquiries required by the parties' motions are: (1) whether the Secretary's regulation is inconsistent with the language of § 1382a(a)(2)(B) of the Congressional Act; and, if it is determined not to be inconsistent with the language of the Act, (2) whether, nevertheless, it is inconsistent with Congress' purpose in providing for SSI benefits. Our Court of Appeals has held that:

Absent evidence that a regulation issued by an agency pursuant to Congressional authority bears no reasonable relationship to the provisions of the statute being administered by the agency ... its interpretation of the statute is entitled to considerable deference. Since the agency is vested with policy-making power, it is authorized to fill in gaps that may have been left by Congress in a statute and we may not substitute our interpretation for that of the agency, so long as the agency's interpretation is 'reasonably defensible.'[6]

Plaintiff is correct that because this 1982 regulation was not passed contemporaneously with the promulgation of the Statute and it conflicts with the agency's earlier policy of not including withheld benefit payments in the computation of income, the court is more reluctant to defer to the agency's interpretation.[7] However, the

---

**3.** 42 U.S.C. § 1382a(a)(2) (emphasis added).

**4.** 20 C.F.R. § 416.1123(b)(1).

**5.** 42 U.S.C. § 1302.

**6.** *Schwartz v. Gordon,* 761 F.2d 864, 868 (2d Cir.1985) (citations omitted); *see also Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *Friends of Sha-*

*wangunks, Inc. v. Clark,* 754 F.2d 446, 449 (2d Cir.1985); *Ithaca College v. NLRB,* 623 F.2d 224, 228 (2d Cir.1980).

**7.** *Cf. General Electric Co. v. Gilbert,* 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976) (Court is less inclined to defer to administrative guidelines which conflict with earlier pronouncements of the agency).

agency's interpretation here is clearly still entitled to some deference.[8]

### Statutory Language

■ Congress did not address the precise question of whether benefits from other programs that are withheld to recoup overpayments constitute income within the definition of "unearned income." While the Act does not include such recoupments in its list of exclusions from income,[9] it does, in defining items which are included as "unearned income," specifically provide in subsection (a)(2)(B) that "any payments *received* ... including veterans' compensation" are such income. However, in the context of the statutory provision, the Secretary appears to be correct in interpreting the term "received" as not prohibiting the inclusion in income of monies that are not actually received in hand but rather are applied to a previous overpayment. The term "received" appears only in subsection (a)(2)(B) of § 1382a(a)(2); if Congress had specifically intended the use of the term "received" in subsection (a)(2)(B) to impose a condition of actual receipt on the items enumerated in that subsection, it knew how and would have imposed such a requirement in the other subsections as well.[10] Most if not all of the items contained in subsections (a)(2)(A), (C), (D), (E), and (F) are items which, under various circumstances, might be credited to, but not actually received by, a beneficiary. Therefore, it is not logical to infer that Congress' use of the term "received" in subsection (a)(2)(B) was intended to insure that those particular payments would not be included in the calculation of "earned income" unless they were *actually* received in hand by an individual in the literal sense of the word. If that had been the intent of Congress, surely it would have inserted "received" into all six of the subsections, or in the initial line of subsection (a)(2), since there is no logical explanation for singling out the payments in subsection (B), as opposed to any of the payments in any of the other subsections, for such treatment. As our Court of Appeals has noted, "it is also true that the surest way to misinterpret a statute is to follow its literal language without reference to its purpose." [11] Plaintiff's emphasis upon dictionary definitions is best answered by the now classic words of Judge Learned Hand that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." [12] No deference need be given to the SSA's interpretation of the Statute in order to conclude that "the term 'received' imposes no special conditions on [VA benefits] and serves merely as a grammatical link between 'payments' and the descriptive list of benefits which follows." [13] As will be discussed below, such an interpretation of the term, rather than attaching a formalistic definition to it, is consonant with the purposes of the statute as well as being more internally consistent with the rest of the provision. Hence, in light of the persuasiveness of this interpretation, this court upholds the Secretary's position that the language of the Statute itself does not require VA benefits to be actually received in order to come within the definition of unearned income under the Statute.

8. *See id.; see also Frank Diehl Farms v. Secretary of Labor,* 696 F.2d 1325, 1330 (11th Cir. 1983).

9. 42 U.S.C. § 1382a(b).

10. *See Lyon v. Bowen,* 802 F.2d 794, 798 (5th Cir.1986).

11. *Viacom Int'l, Inc. v. F.C.C.,* 672 F.2d 1034, 1040 (2d Cir.1982); *see also Lynch v. Overholser,* 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1969) ("The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute ... for 'literalness may strangle meaning.'" (quoting *Utah Junk Co. v. Porter,* 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071 (1946)).

12. *Cabell v. Markam,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

13. *Lyon v. Bowen,* 802 F.2d 794, 798 (5th Cir. 1986).

## Congressional Intent

■ Having concluded that the Secretary's position, that the bare language of the statute does not impose a requirement of actual receipt on the payments of VA benefits in order for them to be counted as income is reasonable it is next necessary to consider whether the Secretary's policy of including VA payments that are not actually received in the calculation of income violates the intent of Congress in providing for SSI benefits. If so, then it will be necessary to construe the definitions of "unearned income" contained in § 1382a(a)(2) as requiring actual receipt in hand by an individual.

Plaintiff accurately points out that, in creating the Supplemental Security Income program, Congress intended " '[t]o assist those who cannot work because of age, blindness, or disability' ... by 'set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons.' " [14] However, in addition to the Congressional intent to provide a minimally decent standard of living to destitute, blind, aged, and disabled individuals, Congress also indicated its intention to prevent the dissipation of the SSI resources through neglect, abuse, or fraud.[15] This Court is in agreement with the Fifth Circuit Court of Appeals [16] that it is within the Secretary's power, in filling a gap left in the statute by Congress, to define "income" in a way that accommodates both of these aims.[17]

Congress has evidenced a clear intent to prevent the dissipation of the SSI resources in the provisions of the statute itself.[18] Moreover, Congress has provided the Secretary with the authority to make administrative and other arrangements as may be necessary or appropriate to carry out his or her function under these provisions.[19]

The Secretary's regulation defines "income" as including VA payments that are not actually received by the recipient, but rather are withheld as a means of recouping an overpayment made to the recipient in which the recipient was not without material fault. It is clear that this regulation is consistent with the Congressional policy aimed at preventing the dissipation of the SSI resources and thus it falls within the Secretary's authority to make administrative and other arrangements as may be necessary or appropriate to carry out his or her function under the Act. However, admittedly, in a case such as this, while the regulation is consistent with the policy aimed at preserving the integrity and resources of the SSI program, it is in tension with the policy of the Act which is aimed at providing recipients eligible for SSI benefits with a minimal subsistence income level. The withheld funds are included in the computation of the recipient's income, and the result is that the recipient receives less SSI benefits than he or she would have received had the withheld funds been excluded from the definition of income. Because the benefit payments which are being withheld are not actually available to the recipient, the total income actually received in hand or available to the recipient is below the guaranteed minimum income or subsistence level. It is here that the tension arises because it is the intent of the SSI program to provide a minimum subsistence level, and yet, even though the recipient is technically receiving the proper amount of SSI payments in accordance with the amount of her additional income, she is actually below the income level in terms of the funds she has available to meet her ordinary expenses.

Yet, Congress has clearly demonstrated that this is a proper result where it is necessary to maintain the integrity and preserve the resources of the SSI program. This is most strongly demonstrated in 42

---

**14.** *Schweiker v. Wilson,* 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981) (quoting S.Rep. No. 92–1230, p. 4, 12).

**15.** *See Lyon v. Bowen,* 802 F.2d 794, 797 (5th Cir.1986).

**16.** *Id.*

**17.** *Cf. Schwartz v. Gordon,* 761 F.2d 864, 868 (2d Cir.1985).

**18.** *See* 42 U.S.C. §§ 1383(b)(1), 1383a; *see also Lyon v. Bowen,* 802 F.2d 794 (5th Cir.1986).

**19.** 42 U.S.C. § 1383b.

U.S.C. § 1383(b)(1), which directs the Secretary to recover SSI overpayments by adjusting and reducing future SSI payments where the recipient was not without fault in connection with the overpayment. In such a case, "any recovery of a prior SSI overpayment from future SSI payments will necessarily reduce the recipient's benefits to an amount beneath the federally-established floor." [20] By promulgating this statutory provision, Congress has shown that the goal of providing a guaranteed minimum level of support is to be compromised where the government's need to prevent the dissipation of its resources through neglect, abuse or fraud is invoked.

In this case, there is no doubt but that the regulation at issue is consistent with the above stated policy. To begin with, plaintiff was held to be not without material fault with regard to the overpayments she had received from the VA. Additionally, if benefits (in this case VA benefits) withheld as a means of recouping a previous overpayment were *not* included as income for SSI purposes, then to the extent a withholding reduced an individual's income below the minimum subsistence allowance it would be refunded to the recipient through the SSI program. The SSI payments would actually be repaying the recipient's debt, and therefore, while the VA program would recoup its losses, the SSI program's resources would be drained as the real source of those repayments. Where this particular conflict of policies

occurs, such a result would not be consistent either with the purpose of the SSI Act or with Congress' demonstrated intent.

However, 42 U.S.C. § 1383(b)(1)(B) shows that Congress has a concern about reducing the level of support an SSI recipient is to receive by too large an amount. While providing for a reduction of SSI payments in order to recoup an overpayment of SSI benefits, and thereby bringing a recipient below the minimum subsistence level, Congress has prohibited the Secretary from withholding SSI payments in an amount greater than 10 percent of the recipient's income for the month. Certainly this provision evidences an intent by Congress to resolve the tension between its policy to provide individuals with a minimum subsistence level through SSI benefits and its policy to avoid the loss of SSI assets and to protect the integrity of the program. This Congressional intent must be considered in determining the propriety of 20 C.F.R. § 416.1123(b) since this regulation, while not reducing SSI payments directly, has the indirect effect of reducing the amount of payments actually received by a recipient by impacting on the income level a recipient is deemed to have. This reduces the recipient's "available" income below the established subsistence level.[21]

In *Lyon v. Bowen* [22] the Fifth Circuit found that in balancing the competing aims and purpose of SSI and social security disability programs, its conclusion may well

---

20. *Lyon v. Bowen,* 802 F.2d 794, 799 (5th Cir. 1986).

21.    While the 10 percent limitation set by Congress in 42 U.S.C. § 1383(b)(1)(B) is a guide in assessing the validity of the Secretary's regulation, it is not determinative. Not only is the limitation contained in § 1383 restricted by its own terms to situations involving the overpayment of SSI benefits in particular, but also 20 C.F.R. § 416.1123(b), the regulation at issue in this case, involves a greater tension between the policies of providing a minimum subsistence level and preserving SSI resources than exits under 42 U.S.C. § 1383(b)(1)(B). This is due to the fact that the full amount of the withholding under § 1383(b)(1)(B) will always be deducted from the SSI payments because it comes directly out of those payments, and therefore SSI funds will never be

used to fund a recipient's debt under § 1383(b)(1)(B). However, if the Secretary were to place a 10 percent limitation on the amount of withholdings from other benefit plans that could be included in income under 20 C.F.R. § 416.1123(b), this would result in a partial "funding" of the recipient's debt through SSI funds whenever the amount of the benefits being withheld was greater than 10 percent of the recipient's income. Because this consequence would be in direct conflict with Congress' desire to avoid such a result, there is a much greater policy justification for allowing a somewhat higher reduction of a recipient's subsistence level under 20 C.F.R. § 416.1123(b), particularly since Congress has already shown a willingness to compromise that level.

22.   802 F.2d 794 (5th Cir.1986).

have been different "were the harsh effects of the challenged regulation not softened by the remedies afforded by section 404.502(c)."[23] In the event of an overpayment of social security benefits, 20 C.F.R. § 404.502(c) provides that the amount of benefit withholdings can be reduced to an amount of not less than $10 of the monthly benefit payable to the individual where this is necessary in order for the recipient to meet his ordinary and necessary living expenses. The Fifth Circuit found that, therefore, it did not need to decide whether the Secretary's policy in withholding 100 percent the recipient's social security benefits had been arbitrary or unreasonable because, under the circumstances of that case, the recipient had not requested a reduction of the withholdings.

The Veteran's Administration Regulations contain a provision which states:

> The size and frequency of installment payments will be governed by the size of the debt and the debtor's ability to pay, but should not extend more than 3 years or be less than $10 per month except in only the most unusual circumstances.[24]

"[A]bility to pay" clearly includes a consideration of the degree to which the recipient has sufficient funds to meet her ordinary and necessary living expenses, and therefore this regulation allows for a reduction in the required "payments made" to recoup overpayments to a recipient in a way that meets Congress' concerns. The VA regulation is even more favorable to the recipient than the SSA regulation discussed in *Lyon v. Bowen* because it allows payments to be less than $10 in unusual circumstances. The existence of this regulation provides the type of mitigation which Congress sought to achieve in 42 U.S.C. § 1383(b)(1)(B) and thereby avoids offending Title XVI's purpose of providing a minimum level of subsistence benefits for disabled persons.

The record in this case contains no evidence that plaintiff requested a reduction in the amount of her VA withholdings. Moreover, the withholding of plaintiff's VA benefits in 1985, the year she began to receive current SSI payments, resulted in her actually receiving only roughly 12 percent less than the total income she would have received had the payments not been withheld.[25] This disparity cannot be said to violate Congressional intent in light of 42 U.S.C. § 1383(b)(1)(B), which allows for a 10 percent reduction in the recipient's income for the month, coupled with the added consideration in this case that failure to include the full amount of the withholding would result in a partial refund to the recipient through increased SSI payments.

### Equal Protection

Plaintiff also raises an equal protection challenge to 20 C.F.R. § 416.1123(b) based on the ground that, when viewed in the light of the 10 percent limitation on direct overpayment deductions from SSI benefits contained in § 1383(b)(1)(B), the regulation creates two classes of SSI recipients, with one being treated more favorably than the other. Specifically, plaintiff argues that while one class, consisting of persons who have received overpayments of SSI benefits, is guaranteed a monthly income after recoupment of at least 90 percent of the SSI standard, the other class, of which plaintiff is a member, is not guaranteed such a protection since there are no set maximum limitations on the withholdings of other benefits.

The Supreme Court has recognized a strong presumption of constitutionality to legislation conferring monetary benefits on individuals because it believes Congress should have discretion in deciding how to expend necessarily limited resources.[26] The relevant inquiry here is whether the resulting classification advances a legit-

---

**23.** *Lyon v. Bowen,* 802 F.2d 794, 800 (5th Cir. 1986).

**24.** 38 C.F.R. § 1.917.

**25.** *See* Pretrial Order, paras. 17–20, for the figures used to calculate the percentage. The re-

duction in income from July 1983–December 1983 was roughly 13 percent and the reduction from January 1984–December 1984 was roughly 12 percent.

**26.** *See Schweiker v. Wilson,* 450 U.S. 221, 238, 101 S.Ct. 1074, 1084, 67 L.Ed.2d 186 (1981).

imate legislative goal in a rational fashion.[27]

20 C.F.R. § 416.1123(b) merely provides that where another benefit payment has been reduced to recover a previous overpayment, the amount of the debt reduction is considered a part of the recipient's unearned income. This provision applies equally across the board to all SSI applicants and recipients, and it is uniformly applied to the receipt of all benefits and withholdings. This regulation was promulgated in 1982, before Congress added the 10 percent limitation on direct withholdings of SSI payments, and therefore it did not result in any disparate treatment between classes.

Moreover, this regulation has nothing to do with establishing the amount that can or will be withheld from any of the benefit payments. It is clearly a rational provision because, as previously discussed, to include less than the amount withheld as income would result in at least a partial "refunding" to the recipient, through the SSI program, of debts incurred as a result of overpayments in other benefit programs.

42 U.S.C. § 1383(b)(1)(B) was added to Title XVI in 1984, and it clearly advances a legislative goal in a rational fashion. Its purpose is to limit the potential reduction in SSI benefits because such benefits are paid with the express intent that they provide the disabled recipient with a minimal subsistence level. The fact that Congress has made such a provision for SSI payments, but not for other benefit programs, is entirely reasonable because the rationale concerning protecting a recipient's minimum subsistence level does not necessarily apply to the receipt of other types of benefits (in fact, both Social Security benefits under Title II and VA benefits do provide for a reduction in recoupment payments *where necessary*,[28]). While arguably Congress might have placed a qualified restriction on other benefit deductions by providing that such deductions were limited to 10 percent of income where the deduction brings the recipient below the SSI standard, the Supreme Court has held that a

> [R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.[29]

It is actually the interface of 42 U.S.C. § 1383(b)(1)(B) and 20 C.F.R. § 416.1123(b) which plaintiff claims creates an equal protection violation on the grounds that when the results of the independent operation of each provision are viewed together, they appear to create a disparate result in which one group of overpaid SSI recipients are guaranteed 90 percent of the SSI standard while other overpaid recipients are not. However, this apparent disparity does not violate the Equal Protection Clause. As previously stated, there may be no reason to limit, in all cases, the reduction of recoupments in non-SSI benefit programs, and therefore to do so would unnecessarily prejudice those programs in the expeditious recoupment of debts owed to them.

An approach that might be used to achieve an equal result between SSI recipients who are subject to deductions in SSI benefits, limited to 10 percent of income, and those recipients who are subject to unrestricted deductions in other benefit programs is to provide, by statute or regulation, that deductions in all benefit payments will be included in income for purposes of computing SSI eligibility only to the extent they are equal to or less than 10 percent of the recipient's income. This would guarantee the recipient at least 90 percent of his SSI standard. However, there is an important and rational reason for not doing this. Such a provision would mean that less than the actual amount of

---

27. *Id.* at 234, 101 S.Ct. at 1082.

28. *See* 20 C.F.R. § 404.502(c) and 38 C.F.R. § 1.917 respectively. '

29. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted).

the deduction was being included in income and, therefore, this would result in the SSI program "refunding," at least in part, the recipient's debt owed to another benefit program. This is exactly what the Secretary sought to avoid in promulgating 20 C.F.R. § 416.1123(b) in the first place, and, as previously discussed in detail, the Secretary's actions are consistent with Congressional intent. As explained earlier, 42 U.S.C. § 1383(b)(1)(B) does not suffer from this problem because it deals with a situation where the full amount of the debt recoupment is necessarily deducted from the SSI payments since they are one and the same, and thus there is no "refunding" problem. Because 20 C.F.R. § 416.1123(b) must deal with the deductions made by other agencies under different programs and regulations, it faces an entirely different situation.

Thus, while when viewed together § 1383(b)(1)(B) and 20 C.F.R. § 416.1123(b) may result in disparate treatment, that result is the byproduct of rational administration of governmental resources and is devoid of any invidious discrimination. It does not violate the Equal Protection Clause. As the Supreme Court has said,

As long as the classificatory scheme chosen by Congress rationally advances a reasonable and identifiable government objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.[30]

Moreover, as already noted, 38 C.F.R. § 1.917 mitigates the problem here by allowing the VA to reduce withholdings where necessary.

Plaintiff's motion for summary judgment is denied and defendant's motion for judgment on the pleadings, upholding the validity of 20 C.F.R. § 416.1123(b) and denying plaintiff injunctive relief and a recalculation of her SSI eligibility, is granted. Consequently, plaintiff's motion for class certification is rendered moot.

So ordered.

---

**30.** *Schweiker v. Wilson,* 450 U.S. 221, 235, 101      S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981).