Velma MARTIN, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant.

No. C 88–0789 TEH.

United States District Court,
N.D. California.

June 10, 1988.

Paul Rose, Legal Aid Soc. of Alameda County, Hayward, Cal., Evelyn Frank, Legal Aid Soc. of Alameda County, Oakland, Cal., Gill Deford & Peter Komlos–Hrobsky, Nat'l Senior Citizens Law Center, Los Angeles, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., Judith A. Whetstine, Chief, Civ. Div., George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on cross-motions for summary judgment and plaintiff's motion for class certification. After careful consideration of the parties' papers and oral arguments of counsel, the Court grants plaintiff's motions for summary judgment and class certification.

### 1. Factual Background.

This cases poses the legal question of whether a regulation promulgated by the Secretary of Health and Human Services ("Secretary") violates a congressional statute and the equal protection component of the Fifth Amendment. On a more human level, however, "the issue is whether Congress intended that individuals living at a subsistence level and depending upon [Supplemental Security Income] ... should have their already meager incomes slashed through a bureaucratic fiction." Plaintiff's Memorandum of Points and Authorities at 1.

The named plaintiff, Velma Martin, is sixty-nine years old. Her late husband was insured under the Railroad Retirement Benefit Act. He died in 1976, and she became eligible for a monthly widow's ben-

efit in December 1978. She received benefits until May 1985, at which time the Railroad Retirement Board ("Board") informed her that it had overpaid her from 1978 through 1982. She allegedly caused the overpayment by failing to inform the Board of additional earnings. The Board notified her that it would withhold the monthly payments for almost three years, until the debt arising from the overpayments was repaid.

Pursuant to 45 U.S.C. § 231i(c), Martin requested a waiver of recovery of overpayment. To obtain such a waiver, she was required to show that 1) she was not at fault for the overpayment and 2) the withholding would cause severe financial hardship. 20 C.F.R. § 255.10. The Bureau of Retirement Claims noted her financial hardship, but denied the waiver request because they found that she was at fault for the overpayment. An Appeals Referee affirmed the decision, also noting her financial hardship. Neither the Bureau or the Appeals Referee informed her that she could request a reduction in the withholding.

This withholding reduced her income from approximately $660 per month to $386 per month, the amount she received in Social Security Retirement Benefits. Because she was not subsisting on this meager income, she applied for Supplemental Security Income ("SSI") in 1987. The Social Security Administration ("SSA") denied her application; it found that her income exceeded the maximum income allowed for SSI eligibility. In calculating that income, however, the SSA counted her *withheld* monthly Railroad benefit. The SSA based this accounting on 20 C.F.R. § 416.1123(b)(1), which includes benefits that are being withheld to recover overpayments as income received by a claimant.

After unsuccessful appeals within the SSA, plaintiff filed this lawsuit. She does not deny that the regulation was correctly applied to her, but instead argues that the regulation violates the Supplemental Secur-

ity Income Act, 42 U.S.C. § 1381, and the equal protection component of the Fifth Amendment.

### 2. The Statute and the Regulation. [1]

Congress established the SSI program as "a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. § 1381. The legislation assures a monthly income for individuals who fall within these categories. The SSI determines both eligibility and the amount of SSI assistance by comparing the beneficiary's earned and unearned income against a national standard. 42 U.S.C. § 1382. Under section 1382a(a)(2)(B), the SSA should include "[a]ny payments received as an annuity, pension, retirement, or disability benefit ..." as income of the beneficiary.

When the SSI statute was enacted, the Secretary's predecessor did not include withheld benefits as income, finding that only income actually possessed by the claimant should be used to determine SSI eligibility. 20 C.F.R. § 416.1120 (1977). Under the old policy, the Secretary defined income as "anything an individual receives in cash or in kind that can be used to meet his or her needs for food, clothing, and shelter." 44 Fed.Reg. 6430 (Feb. 1, 1979).

The Secretary completely reversed this policy in 1982 by promulgating 20 C.F.R. § 416.1123(b)(1), the regulation at issue here. That regulation requires the SSA to include more income than a claimant actually receives "where another benefit payment ... has been reduced to recover a previous overpayment ..." That is, the Secretary counts withheld benefits as being received by the claimant, even though the claimant does not actually receive the benefits. Thus, the regulation substitutes *entitlement* to benefits for *actual receipt* of benefits as the proper definition of income. As demonstrated by Ms. Martin's case, this policy reversal causes rather drastic re-

---

**1.** This summary of the statute and the regulation borrows heavily, indeed paraphrases, a portion of *Szlosek v. Secretary of Health and Hu-*

*man Services,* 674 F.Supp. 944, 946–947 (D.Mass.1987), *appeal pending,* No. 88–1141 (1st Cir.).

sults. This policy change was not based on any substantive changes in the SSI statute.

The question presented is whether the new regulation violates the SSI Act and the equal protection component of the Fifth Amendment. Five courts in other circuits have already reviewed this challenge,[2] but this is the first case raising this issue in this circuit. We begin with a review Martin's statutory claims.

### 3. Degree of Deference.

The parties dispute the degree of deference with which we should review this regulation. In *Robinson v. Bowen*, 650 F.Supp. 1495 (S.D.N.Y.1987), *aff'd* 828 F.2d 71 (2d Cir.1987), the court reviewed this same regulation at issue here. The court enunciated two reasons why this regulation is entitled to less deference than the usual regulatory interpretation of a statute. First, the 1982 regulation was promulgated nine years after the statute was passed. 650 F.Supp. 1497. Second, the regulation reversed the Secretary's nine year policy of not counting withheld payments as income received. *Id.* at 1497. Thus, the court stated that it would be "more reluctant to defer to the agency's interpretation" though the interpretation was "entitled to some deference." *Id.* at 1497–1498. In reviewing this regulation, we adhere to that same standard.

### 4. Statutory Construction.

Plaintiff argues that this regulation violates the statutory definition of income provided in 42 U.S.C. § 1382a(a)(2)(B). This subsection defines income as "payments *received* as an annuity, pension, retirement, or disability benefit ..." (emphasis added) Plaintiff contends that Congress used the word "received" to require the actual receipt of money. If so, the Secretary's

counting of Martin's unreceived and withheld retirement benefit violates the statute.

The Secretary, on the other hand, defends the regulation by arguing that Congress only meant "constructive receipt" of these benefits.

Four of the five courts that have examined this regulation have agreed with the Secretary. All four courts make much of the fact that in other subsections of the statute, Congress listed similar types of income without using the word "received." For example, subsection (E) includes "gifts (cash or otherwise), support and alimony payments, and inheritances" as income, without using the word received. *Robinson, supra,* 650 F.Supp. at 1498, *Lyon, supra,* 802 F.2d at 798, *Szlosek, supra,* 674 F.Supp. at 948. Since Congress did not explicitly require actual receipt of these other types of income, these courts have concluded that Congress did not intend to require actual receipt of the benefits described in subsection (B). Instead, the word "received" "serves only as a grammatical link between 'payments' and the descriptive list of benefits which follows." 802 F.2d at 798.

With all due respect, we believe that the courts have made too much of these omissions. First, Congress did use terminology comparable to the word "received" in other subsections. For example, subsection (A) lists "support and maintenance *furnished* in cash or in kind." (emphasis added). Similarly, subsection (D) instructs the Secretary to include the *proceeds* of life insurance as income, thereby connoting actual availability. While Congress did not use verbs connoting receipt for subsections (C), (E), and (F), it did use those verbs for subsections (A) and (B). These four courts have found that the non-existence of an explicit receipt requirement in subsections (C), (E), and (F), negates the existence of

---

**2.** Four of these courts have rejected the challenge. *See Robinson v. Bowen,* 650 F.Supp. 1495 (S.D.N.Y.1987), *aff'd* 828 F.2d 71 (2d Cir. 1987); *Lyon v. Bowen,* 802 F.2d 794 (5th Cir. 1986); and *Szlosek v. Secretary of Health and Human Services,* 674 F.Supp. 944 (D.Mass.1987), *appeal pending,* No. 88–1141 (1st Cir.). One court has invalidated the regulation. *Healea v.*

*Bowen,* No. 86–3060 (C.D.Ill., May 6, 1987), *appeal pending,* No. 87–2300 (7th Cir.). When citing the *Robinson* case, we will typically cite to the district court opinion, because the appellate opinion rather summarily affirms the reasoning of the district court. However, one of the appellate judges in *Robinson* dissented from the affirmance; that dissent will also be cited.

the explicit receipt requirement in subsections (A) and (B). However, it is just as logical to assume that the explicit requirement in subsections (A) and (B) implies a comparable receipt requirement in (C), (E), and (F). At the very least, we believe that this rejection of the plain meaning ·of the word "received" rests on an exceedingly tenuous theory.

Our construction of the statute as requiring actual receipt is informed by several Ninth Circuit decisions that address similar disputes. For ' example, in *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981), an SSI claimant with two minor children also received a monthly veteran's pension benefit. The statute governing the pension made his children separately eligible for pension benefits. Each month, the Veterans Administration ("VA") sent Whaley a check for approximately $150, $100 of which was earmarked for his use, with the remaining $50 for the children. In calculating Whaley's income to determine his eligibility for SSI, the Secretary included the $50 targeted for the children as income received by Whaley. *Id.* at 873–874.

The Ninth Circuit held that the Secretary erroneously included the $50 sum. The court rejected the Secretary's argument that the $50 should be counted as Whaley's income since he was not legally obligated to use the money for his children. Instead, the court held that the Secretary must assume that Whaley would in good faith spend the money for his children's needs. Since that money was therefore not available to meet Whaley's own needs, it should not be deemed his income. *Id.* at 874–875.

Similarly, in *Summy v. Schweiker*, 688 F.2d 1233 (9th Cir.1982), Summy, a claimant for SSI, also received a veteran's pension. He incurred an unusual medical expense, and the VA sent him a reimbursement check for the expense. The Secretary counted that payment as income received by Summy, and on that basis denied him SSI payments for one quarter of a year. *Id.* at 1234. Defending this accounting before the Ninth Circuit, the Secretary argued that the payment should be considered income received, since Summy's "pension was augmented with funds which when received were as spendable as any other dollar of the pension." *Id.* at 1235.

The court rejected this argument. The court noted that when it decided *Whaley*, it "carefully examined when the receipt of an item of value by an SSI beneficiary constitutes income which is *actually available* to meet the beneficiary's basic needs." *Id.* at 1235, emphasis added. The court then held that the payment represented reimbursement for expenses over which the recipient had no control. Since that prior expenditure "could not have been used to meet the 'basic needs for food, clothing and shelter,' " it would not "advance[ ] the purposes of the SSI program" to count that payment as income received. *Id.* at 1235. *Accord, Jackson v. Schweiker*, 683 F.2d 1076, 1082–1084 (7th Cir.1982), holding that the difference between the fair market value of a recipient's rent and the rent actually paid may not be treated as income, since it is not actually available to meet the recipient's needs; *McDermott v. Secretary of Health and Human Services*, 612 F.Supp. 202, 205 (W.D.N.Y.1985), holding that the garnished wages of a parent may not be deemed income accruing to the child, though non-garnished wages may be attributed to the child.

These cases are united by the same underlying principle: funds that a recipient cannot actually use to meet her basic needs should not be treated as income for SSI eligibility.[3] As Judge Oakes stated in his dissent in *Robinson*, "[t]he statute should be read as requiring that SSI benefits be calculated on the basis of income … *actually available* to a claimant to satisfy his needs." 828 F.2d at 74 (Oakes, J., dissenting) (emphasis added). Since the claimant's "withheld VA benefits do nothing at all to

---

**3.** In our view, the facts of this case present an even stronger need to examine the concept of receipt realistically than the facts presented in *Whaley* and *Summy*. In both of those cases, the recipient actually received cash, though it was earmarked for particular purposes. In addition, that cash could be used for meeting the recipients' basic needs. Here, Martin never receives the cash, so that no portion of it is available to meet her needs.

enhance [her] purchasing power," they should not be counted to defeat a claimant's eligibility to SSI. *Id.*

The constructive receipt regulation is fundamentally at odds with the actual availability standard elucidated by these courts. It is also directly contrary to the plain meaning of the word "received." However, we do not end our inquiry at this statutory construction stage. Instead, we now examine whether the regulation is consistent with underlying congressional intent.

### 5. *Congressional Intent.*

Even if we did not find the statutory language dispositive, we find other indicia of congressional intent which compel the invalidation of this regulation.

First, and most importantly, we believe that the regulation conflicts with the basic purpose of the SSI program. SSI is a categorical, needs-based program designed to provide an income "floor" below which the elderly, disabled, and blind may not go. Congress intended to "provide positive assurance that the Nation's aged, blind and disabled people would no longer have to subsist on below-poverty level incomes." S.Rep. No. 92–1230, 92d Cong.2d Sess. (1972), U.S.Code Cong. & Admin.News 1972 p. 4989. Senator Long, Chairman of the Senate Finance Committee, described the program as providing a "guaranteed monthly income" and "assured monthly income." 118 Cong.Rec. 36805, 36812 (Oct. 17, 1972). Indeed, Congress was so concerned that the program be available to meet recipient's needs that they prohibited any garnishment or attachment of SSI funds to pay a recipient's debts. 42 U.S.C. § 407 (incorpated in Subchapter XVI by 42 U.S.C. § 1383(d)(1)) (Supp. III 1985).

By enacting SSI, Congress erected a safety net to catch those who are unable to provide for their basic needs. By promulgating this regulation, the Secretary has carved a rather wide hole in that net; the regulation has consigned Martin and others with similar circumstances to an income well below the poverty level.

The four courts that have upheld the regulation did not ignore this congressional intent. However, they found that Congress had enunciated a competing goal: ensuring the fiscal solvency of the program. The courts agreed with the Secretary that the regulation serves this goal. If a debtor of one federal program can use that indebtedness to establish his or her eligibility to SSI, the debtor is then using SSI funds to, in essence, pay off the debt to that other program. By preventing a debtor from establishing SSI eligibility on the basis of the debt, the regulation prevents the siphoning off of SSI funds. *See Robinson,* 650 F.Supp. at 1500. Thus, these courts have upheld the Secretary's regulation on the grounds that it balances Congress' competing goals of minimum subsistence and fiscal solvency.

We have seriously considered this subsidy argument, and have been careful to defer to the Secretary's weighing of the fiscal solvency and minimum subsistence goals. Moreover, we know that cases with "hard" facts often produce bad law, and we have tried arduously to avoid denigrating the importance of the regulation merely because it produces some unsavory results. However, while we agree that Congress did include fiscal solvency as one of its goals, we respectfully disagree that Congress could have intended to strike the balance reflected in the regulation.

Our conclusion is informed by the way in which Congress has dealt with the overpayment of *SSI* funds. 42 U.S.C. § 1383(b)(1)(B) provides that "absent fraud, willfull misprepresentation, or concealment of material information," the SSA may not deduct more than ten percent of a beneficiary's monthly payment to recover prior SSI overpayments to that beneficiary. That provision does not apply here, since Martin is repaying Railroad Retirement Benefits, not SSI benefits. However, the existence of that provision is a trustworthy guidepost of congressional intent for how the SSA should treat debt repayment for other programs.

By enacting this provision, Congress balanced the goals of minimum subsistence

and program solvency. The provision allows a recipient to fall below the subsistence level to pay a debt to the SSI program, but strictly limits the amount of income reduction to ten percent of the SSI benefit. Here, Ms. Martin's income has been "reduced" by almost one-third, since her current monthly income is now $386, rather than the $575 she would receive if eligible for SSI.

Thus, the regulation drastically conflicts with the ten percent balance struck by Congress as well Congress' overriding intent, and strongly suggests to us that Congress could not have intended the Secretary to so harshly treat debt payments to other programs.

*Relief Provisions.*

Three of the four courts which have upheld the regulation hinged their decision on other regulations which alleviate the harsh effects of this regulation. In *Lyon,* the Fifth Circuit stated that its decision to uphold the regulation might have been different were it not for the relief provided in 20 C.F.R. § 404.502(c). 802 F.2d at 801. That section allows an overpaid recipient of Social Security Disability Benefits to petition for a reduction in withholding of future benefits if such withholding would "deprive the person of income required for ordinary and necessary living expenses."[4] Indeed, the claimant in *Lyon* did successfully apply for this relief; his monthly benefits were reduced by only $10 per month to pay for the prior overpayment. *Id.* As the court stated, "[a] difference of $10 between what is actually received and what is 'constructively' received under [the challenged regulation] need not concern us." *Id.* The court then cautioned: "if a greater portion were being withheld—one hundred percent, for example—there would be greater concern that counting the benefits as being 'received' under § 1382a(a)(2) of the Act is arbitrary and unreasonable."[5]

We have before us just such a case—the entire portion of Martin's benefit payment is being withheld. Thus, there is a large, perhaps even life-sustaining difference between the "actual" receipt of $386 and the "constructive" receipt of $654.16, (the $386 plus her unreceived, withheld $268.16 Railroad Retirement Benefit). Given the *Lyon* court's ringing caveat that its decision hinged on Lyon's success in obtaining reduced withholding, we are confident that the court would rule differently if presented with the facts of this case.

Plaintiff argues that the Railroad Retirement Regulations do not provide for similar reduced withholding. The Secretary disagrees. The Secretary calls our attention to 20 C.F.R. § 255.13 and 255.14. Section 255.13 allows the Board to compromise recovery of overpayments that do not exceed $20,000. Section 255.14 instructs the Board to consider, *inter alia,* the debtor's ability to pay when determining whether to compromise. However, "[c]ompromise is at all times within the discretionary authority of the Board or its designee." 20 C.F. R. § 255.13. Thus, these regulations do not compel the Board to grant reduced withholding relief. Moreover, since the regulation gives the Board this discretion, the Board's denial of a compromise appears to be insulated from judicial review as "agency action committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Furthermore, even if Martin had a right to petition for reduced withholding, she was never given notice of this right. The failure of the Railroad Bureau to provide this notice is particularly mysterious, because it noted her financial hardship when she applied for a *waiver* of the withholding. As already stated, the waiver application was denied; though Martin had satisfied the "hardship" prong of the waiver test, she could not demonstrate that the overpayment was not her fault. Without automatic notice of the relief provision, there is no guarantee that recipients like

---

4. This relief provision does not apply to Martin, because the provision is available only for recipients of Social Security Disability benefits. As noted, Martin receives benefits from the Railroad Retirement Program.

5. *See also Robinson,* noting that a similar VA regulation allows a recipient to petition for reduced withholding, based on the recipient's inability to pay. 650 F.Supp. at 1501.

Martin will be able to even apply for that relief. As a result, there is no guarantee that the harsh effects of the Secretary's regulation will be alleviated for SSI claimants like Martin.

Finally, the constructive receipt regulation applies to numerous benefit programs, both public and private. The Secretary does not contend that *all* of these programs contain provisions for reduced withholding. Therefore, we may not uphold the constructive receipt regulation on the basis that other regulations contained in other benefit programs soften its harsh effect. We agree with the *Lyon* court that the relief provision available to that plaintiff sufficiently softened the draconian effects of the constructive receipt regulation. However, we disagree that in this class action suit, we may rely on a particular relief provision to validate the regulation, since the regulation applies whether or not a benefit program has a relief provision.[6]

*Conclusion.*

■ For all of these reasons, we feel we must depart from the reasoning of the other courts. We find that the regulation violates both an express statutory command and the overriding intent of Congress. In addition, in our view, the Secretary has impermissibly inserted an additional eligibility criteria into the SSI program: the concept of fault. That is, the Secretary has implicitly determined that those individuals who are thrust into poverty as a result of their debts to another benefit program are not entitled to SSI's income maintenance.

It bears repeating that this is a program of last resort for people in need, *regardless* of the circumstances that caused that need. SSI "subsidizes" the debts of gamblers, the liquor of alcoholics, and the lifestyles of those who improvidently failed to save enough income to avoid poverty later in life. Congress made the difficult policy choice to provide a guaranteed income for three categories of individuals. We believe that fault has no place in SSI's broad charter; the program does not distinguish between the "deserving" and the "undeserving" poor, but rather provides cash to meet the basic needs of the elderly, disabled, and blind, simply because they are poor, needy, and human. Congress intended no "debtor" exception to this principle.

Therefore, we hold that this regulation is arbitrary, capricious, and contrary to law, and strike it as invalid.[7]

*Class Certification.*

■ Plaintiff moves to certify a class of all persons residing in the Ninth Circuit "whose SSI benefits have been, are being, or will be denied, terminated, or reduced" because of the constructive receipt regulation. Plaintiff argues that the four requirements of Federal Rule of Civil Procedure 23(a) have been met, and proposes that we certify the class under Rule 23(b)(2), which requires that "the party opposing the class has acted ... on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole ..."

The Secretary's sole argument against certification is that the "numerosity" requirement of 23(a) has not been met. The Secretary contends that only claimants who have exhausted their administrative remedies may challenge this regulation. Since plaintiff has failed to show that there are numerous claimants who have exhausted their administrative remedies, we should not certify this class.

The Court will not tarry long on this argument. The Supreme Court has clearly held that exhaustion is not required for class action lawsuits challenging a classwide Social Security *policy. See Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct.

---

6. These relief provisions may be relevant, however, in shaping a new regulation. For example, under a new regulation the Secretary could consider whether a claimant was entitled to reduced withholding from another program in determining whether to apply a constructive receipt policy to that claimant. A more narrowly tailored regulation might avoid contravening congressional intent.

7. Since we have invalidated the regulation on statutory grounds, we do not address plaintiff's equal protection argument.

2022, 2031–2033, 90 L.Ed.2d 462 (1986). This decision, and the many others following it, is based on the common-sense conclusion that it would be absurd to require every claimant affected by a regulation to appear before the Secretary and separately challenge its statutory and constitutional validity. In this case, the Secretary has announced his policy, and has had ample opportunity to modify the regulation if he wished to do so. The Secretary intends to continue to apply this regulation in every appropriate case. Therefore, no policy is served by requiring each individual to exhaust administrative remedies before joining in this lawsuit.

We find that plaintiff has met all the requirements of Rule 23, and certify the proposed class.

IT IS SO ORDERED.