**Marie ROBINSON, Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

**No. 1243, Docket 87–6051.**

United States Court of Appeals, Second Circuit.

Argued June 17, 1987.

Decided Aug. 27, 1987.

Marianne Artusio, Westchester Legal Services, Inc., Yonkers, N.Y., for plaintiff-appellant.

Mark S. Sochaczewsky, Sp. Asst. U.S. Atty., S.D. of N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., for the S.D. of N.Y., Nancy Kilson, Asst. U.S. Atty., S.D. of N.Y., New York City, Annette H. Blum, Chief Counsel, Region II, Linda A. Riffkin, Asst. Regional Counsel, Dept. of Health and Human Services, New York City, of counsel), for defendant-appellee.

Before OAKES, MESKILL and PRATT, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Weinfeld, J., granting the motion of the Secretary of Health and Human Services (Secretary) for judgment on the pleadings. Plaintiff-appellant Marie Robinson's complaint was dismissed and her motion to certify a class was denied as moot.

In this action, brought pursuant to 42 U.S.C. § 405(g) (1982), Robinson challenges a regulation promulgated by the Secretary, 20 C.F.R. § 416.1123(b)(1), which permits the Secretary to calculate Supplemental Security Income (SSI) benefits by including in unearned income amounts not actually received in hand but which were withheld by other agencies to recover prior overpayments.

Robinson, a widow receiving benefits from the Veteran's Administration (VA), failed to report to the VA additional income she received under Title II of the Social Security Act. As a result, she began receiving overpayments from the VA in 1981. In 1982, the VA began to recover the overpayment by withholding Robinson's entire monthly benefit. By October 1985, the entire overpayment was recaptured and Robinson again began to receive her monthly VA check.

In 1983, while her VA benefits were being withheld, Robinson applied for SSI benefits. Her application was finally approved by an Administrative Law Judge in January 1985. Under a Social Security Administration regulation, 20 C.F.R. § 416.-1123(b)(1), the Secretary calculated Robin-son's SSI benefit amount by including in her unearned income the amounts withheld by the VA to recoup its overpayment. Robinson, therefore, was deemed to have a greater amount of income than she actually received. Accordingly, the amount of SSI benefits allowed was lower than it would have been had only the funds she received in hand been considered as income.

Robinson challenged the Secretary's regulation on the ground that it conflicted with the governing statute, 42 U.S.C. § 1382(a)(2)(B) (1982), congressional intent, the policy behind awarding SSI benefits, the Deficit Reduction Act of 1984, 42 U.S.C. § 1383(b)(1)(B) (Supp. III 1985), and the Equal Protection Clause. Judge Weinfeld rejected Robinson's challenge and dismissed the complaint. This appeal followed.

We disagree with Robinson's contention that the Secretary exceeded his authority in promulgating section 416.1123(b)(1). As Judge Weinfeld noted, if overpayment withholdings were excluded from unearned income, then Robinson's SSI benefit would be increased and the VA debt would become subsidized with SSI funds. This result would frustrate the congressional policy of preserving SSI resources. We affirm the judgment of the district court, substantially for the reasons set out in Judge Weinfeld's opinion below, *Robinson v. Bowen*, 650 F.Supp. 1495 (S.D.N.Y.1987). The judgment of the district court is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent.

Income and resources taken into account in determining SSI eligibility include "unearned income," defined in 42 U.S.C. § 1382a(a)(2)(B) to include

any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits.

I do not put much stock in the omission of "received" from the subsections other

than (a)(2)(B), i.e., (a)(2)(A), (C), (D), (E), and (F), though such an omission does create an ambiguity.

Congress's purpose in creating the SSI program was " '[t]o assist those who cannot work because of age, blindness, or disability' ... by 'set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons.' " *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981), quoting S.Rep. No. 1230, 92d Cong., 2d Sess. 4, 12 (1972). The legislation was "designed to provide a positive assurance that the Nation's aged, blind, and disabled people would no longer have to subsist on below-poverty level incomes," S.Rep. No. 1230 at 384, by providing an "assured total monthly income," *id.* at 13, 75. As the Seventh Circuit has stated it, "increasing purchasing power to bring it up to the minimum poverty level is the underlying purpose of the SSI statute and the accompanying regulations." *Jackson v. Schweiker*, 683 F.2d 1076, 1082 (7th Cir.1982).

The primacy of this goal of ensuring that persons have enough to meet their basic needs is indicated, for example, in 42 U.S.C. § 407 (incorporated in Subchapter XVI by 42 U.S.C. § 1383(d)(1) (Supp. III 1985)), which provides that social security and SSI "moneys paid or payable ... shall [not] be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." In particular, the primacy of the goal of meeting basic needs over that of preventing dissipation of SSI resources is clearly indicated in § 2612 of the Deficit Reduction Act of 1984, 42 U.S.C. § 1383(b)(1)(B) (Supp. III 1985), which, absent "fraud, willful misrepresentation, or concealment of material information," limits recovery of SSI overpayments to 10% of the applicable SSI rate unless the recipient requests recovery at a higher rate. This provision is inapplicable in this case, because appellant is repaying VA, not SSI, overpayments. But the provision *is* a sure indicator of congressional intent as to how the goal of meeting basic needs is to be balanced against the policy of preventing dissipation of SSI funds: the former is to

prevail. Congress clearly intended that SSI recipients should not, in an SSI overpayment recoupment context, have to survive on incomes more than 10% below SSI standards; and this reflects a more general intention that the primary goal of the SSI scheme is that persons' basic needs must be met.

Basic needs cannot be met with income that is not actually, but only constructively, available. "An increase in 'purchasing power' can only mean an increased ability to pay for goods that are needed or wanted." *Jackson*, 683 F.2d at 1082. "Phantom income" effects no increase in purchasing power. *Id.* The Secretary seems to recognize the statute's aim of maintaining real purchasing power, for he defines income as "anything you receive in cash or in kind *that you can use to meet your needs* for food, clothing, or shelter." 20 C.F.R. § 416.1102 (1986) (emphasis added). Furthermore, in a contemporaneous interpretation that prevailed from 1974 until 1982, the Secretary's regulations stated that "[i]n determining the amount of unearned income the amount actually available to the individual is considered." 20 C.F.R. § 416.-1120 (1977). *See* 39 Fed.Reg. 3674 (Jan. 29, 1974) (adopting regulations); 45 Fed.Reg. 65549 (Oct. 3, 1980) (amending wording but effecting no substantive change). On the "actual availability" requirement, *see generally Heckler v. Turner*, 470 U.S. 184, 199–204, 105 S.Ct. 1138, 1146–49, 84 L.Ed.2d 138 (1985).

There is every reason to believe that the actual availability standard is a statutory one. *See, e.g., Cannuni v. Schweiker*, 740 F.2d 260, 264 (3d Cir.1984) (though the statute did not define "resources," the court had "little hesitation in holding that in referring to 'resources' Congress intended the term to mean property the claimant owns or has the current right to use for his own benefit. After all, it is because of the inability to pay for his own subsistence that the statute grants SSI to eligible claimants. It follows logically that in using the term 'resources,' the statute refers to property that claimants can apply towards their support"); *Rosenfeld v. Secre-*

*tary Of Health and Human Services*, 563 F.Supp. 1192, 1195 (E.D.N.Y.1983) (Weinstein, C.J.) ("That an availability analysis may be mandated by the statute itself is suggested by ... 42 U.S.C. § 1382c(f)(1), which declares that in deeming the income of a cohabiting spouse, availability is not to be considered, except as the Secretary may prescribe. A reasonable inference to be drawn is that all other income attributed to a claimant must actually be available.").

Nevertheless, the Secretary's longstanding interpretation of the statute to require that unearned income taken into account in calculating benefits be actually available was changed in 1982 so that benefits withheld to recoup an overpayment would be considered unearned income. 20 C.F.R. § 416.1123(b)(1) (1986). The reasons given for the change were (1) that "the statute does not cite reduction of other benefit payments to recover prior overpayments as one of the listed income exclusions" (hardly an adequate explanation, given distinct reasons, noted above, for believing the statute requires actual availability) and (2) that "the amount withheld is received by the individual since it is used to reduce the individual's obligations." 47 Fed.Reg. 13782 (Apr. 1, 1982). The second reason suggests that the Secretary may even regard the withheld benefits as actually available. But this is untenable, for

> a consideration of *availability* must be read in the economically realistic context of purchasing power to provide for one's basic needs or ... an amount associated with "a sum on which to live." Resources ... are not actually available if they fail to enhance purchasing power— the capability for providing for basic needs.

*Jackson*, 683 F.2d at 1086, quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981). The withheld VA benefits do nothing at all to enhance appellant's purchasing power. True, they go to reduce an existing debt, and therefore constitute an "economic benefit." But this benefit, for an SSI recipient, is surely largely theoretical. First, suppose appellant did have control over whether any SSI benefits were to be used

to repay the VA debt. She could then simply refuse to repay the debt and use her SSI benefit for her basic needs. The Secretary could not then attach her benefits, for they are exempt from the claims of creditors. 42 U.S.C. § 1383(d)(1). If this is right, then the VA benefits withheld at source are not, as a practical matter, an economic benefit, but a significant detriment to appellant. Second, it is clear that the withheld funds do not help appellant meet her needs *now*, even if the overpaid funds helped her meet them at the time of the overpayment. However one looks at it, the effect of counting the withheld funds as income is that appellant actually has only 87% or 88% of what she needs (by definition) to meet her daily basic requirements, and is somehow expected to "use" to meet her remaining needs funds over which she had no control. *Cf.* 20 C.F.R. § 416.640(d) (1986) (payee representing beneficiary may not use benefits to settle beneficiary's preexisting debts unless "the current and reasonably foreseeable needs of the beneficiary are met").

To summarize: The statute should be read as requiring that SSI benefits be calculated on the basis of income (including in-kind income) actually available to a claimant to satisfy his needs, except where the statute states otherwise or gives the Secretary, explicitly, the power to define an item of income otherwise. Withheld VA benefits being used to recoup a VA benefit overpayment are not actually available and may not be counted as income in calculating SSI benefits, and the Secretary's regulation that defines such withheld funds as income is outside his powers. *Accord Healea v. Bowen*, No. 86–0360 (C.D.Ill. May 6, 1987).

Furthermore, it is difficult to see why much deference should be due the 1982 regulation that is at issue in this case. The regulation changed a nine-year-old policy that was contemporaneous with the statute and so particularly entitled to deference. *See, e.g., Watt v. Alaska*, 451 U.S. 259, 272–73, 101 S.Ct. 1673, 1680–81, 68 L.Ed.2d 80 (1981) ("The Department's contemporaneous construction carries persuasive

weight. *Udall v. Tallman,* 380 U.S. [1,] 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616.... *The Department's current interpretation, being in conflict with its initial position,* is entitled to considerably less deference" (emphasis added)). In the circumstances, it was incumbent upon the Secretary to produce good reasons for the about-face, and this he has failed to do. The two reasons given are inadequate, as noted above.

I would reverse.