Rose **SZLOSEK** and **Kathleen Starkey**, Plaintiffs,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

Civ. A. No. 85–0318–F.

United States District Court,
D. Massachusetts.

Nov. 19, 1987.

Peter Benjamin, Western Mass. Legal Services, Springfield, for plaintiffs.

Mary E. Carmody, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

Rose Szlosek and Kathleen Starkey, recipients of Social Security Title II benefits, challenge the validity of 20 C.F.R. § 416.1123(b) (1986), which deems money withheld to recoup overpayments under Title II of the Social Security Act ("Title II"), 42 U.S.C. §§ 401–433, as income for the purposes of calculating Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383c.

This action is before the Court on plaintiffs' motion for summary judgment and class certification. Defendant counters with a cross motion for summary judgment. Plaintiffs have exhausted their administrative remedies and are properly in this Court pursuant to 42 U.S.C. § 405(g). There are no material factual disputes. Plaintiffs claim that 20 C.F.R. § 416.1123(b) implementing 42 U.S.C. § 1382(a)(2)(B) of the Act is not a reasonable interpretation of that statutory provision. Plaintiffs argue that 1) the Secretary misinterprets the plain language of the statute, 2) the regulation contravenes congressional intent, 3) it constitutes impermissible cross program recovery, and 4) it violates the Equal Protection Clause.

## I. FACTS

Plaintiffs are both elderly widows. Each is in the process of repaying overpayments under Title II of the Social Security Act. Both have been adjudged to be "not without fault" in receiving the overpayments pursuant to 42 U.S.C. § 404(b). Therefore, the Social Security Administration ("SSA") is in the process of recovering these overpayments from their Title II benefits.

Rose Szlosek is 69 years old. As a widow, she is entitled to gross Title II benefits of $501 per month. Of that amount, $100 is withheld per month to recoup a prior Title II overpayment. Thus, her net Title II benefit is $401 per month. Kathleen Starkey is 79 years old. She is entitled to $405 under Title II. The sum of $92 per month is withheld to recoup an overpayment. Thus, her net Title II benefit is $313. Both plaintiffs claim they would be eligible for more SSI benefits if their net Title II benefits were considered as their income. For example, Rose Szlosek receives no SSI benefits. However, were her income of $401 considered for the purposes of determining SSI needs, then she would be eligible for $83.82 per month in SSI benefits. Kathleen Starkey already receives $82 per month in SSI benefits but, if her net income of $313 were considered, she would be entitled to $171.82 in SSI benefits per month.

## II. STATUTORY AND REGULATORY SETTING

This action involves two federal entitlement programs: Supplemental Security Income, Pub.L. 92–603, 42 U.S.C. §§ 1381–1383c, and Title II of the Social Security Act, 42 U.S.C. § 401–433. SSI and Title II are separate programs, each operating pursuant to different statutory authority and receiving funding from separate sources. Title II is funded by employee and employer Federal Insurance Contributions Act ("FICA") contributions. SSI is funded by general revenues collected through personal, corporate and other taxes. The regulation in dispute concerns the calculation of income for the purposes of assessing SSI needs. Specifically, 20 C.F.R. § 416.1123(b) includes money withheld from Title II benefits to recoup a prior Title II overpayment in determining whether an individual qualifies for SSI benefits.

### A. The SSI Program

Congress established the SSI program as "a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. § 1381. The legislation was "designed to provide a positive assurance that the Nation's aged, blind and disabled people would no longer have to subsist on below-poverty level incomes ... by providing an assured total monthly income." *Robinson v. Bowen*, 828 F.2d 71, 73 (2d Cir.1987) (Oakes, J., dissenting) (citing S.Rep. No. 1230 at 384).[1] It is a program of last resort for people with no other source of income. Because SSI is a supplemental program, SSI beneficiaries must apply for every other source of income to which they are entitled. 42 U.S.C. § 1382(e)(2). Income received from other sources is then deducted from the amount received in SSI benefits. The SSI program determines the amount of assistance granted by comparing the beneficiary's earned and unearned income against a standard. 42 U.S.C. § 1382(b). The standard for determining unearned income is statutorily defined as:

> Any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits.

42 U.S.C. § 1382(a)(2)(B). SSI thus provides subsistence level income for the recipients of many different benefit programs.

### B. Overpayments

The Social Security Act and the regulations promulgated pursuant to it provide that "whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this title, proper adjustment or recovery shall be made, under regulation pre-

---

1. In upholding the Secretary's promulgation of 20 C.F.R. § 416.1123(b), the Second Circuit stated that "we affirm the judgment of the district court, substantially for the reasons set out in Judge Weinfeld's opinion below, *Robinson v.* *Bowen*, 650 F.Supp. 1495 (S.D.N.Y.1987)." *Robinson v. Bowen*, 828 F.2d 71, 72 (2nd Cir.1987). Therefore, this Court will cite both from the Second Circuit and the district court opinions.

scribed by the Secretary." 42 U.S.C. § 404(a)(1). The Social Security Administration often waives overpayments when they are received through no fault of the beneficiary. When, however, an overpayment is made because the beneficiary has not provided the Secretary with current information, that beneficiary is found to be "not without fault" and is required to return the amount overpayed. 20 C.F.R. § 410.561(g). Plaintiffs do not dispute the Secretary's decision that they were "not without fault" and are obligated to refund their overpayment. The facts surrounding their incurrence of an overpayment are not relevant.

The issue in this case is a change in the regulations governing the categorization of unearned income deducted for overpayments. When SSI was enacted, the Secretary's predecessor promulgated a regulation stating that eligibility for SSI could only be calculated according to the income actually possessed by an applicant. 20 C.F.R. § 416.1120 (1977). This regulation was explained further in 1979 by an amendment defining income as "anything an individual receives in cash or in kind that can be used to meet his or her needs for food, clothing, and shelter." 44 Fed.Reg. 6430 (Feb. 1, 1979). The result of these regulations was that Title II benefits withheld to recoup a Title II overpayment were not counted as income when calculating an SSI recipient's income.

In 1982, however, a different Secretary decided, essentially, to make a policy reversal by including as income benefits withheld to recoup a Title II overpayment. In promulgating 20 C.F.R. § 416.1123(b)(1), the Secretary provided SSI applicants with the following notice:

*Amount considered as income.* We may include more or less of your unearned income than you actually received. (1) We include more than you actually receive where another benefit payment (such as a social security incurrence benefit) ... has been reduced to recover a previous overpayment....

20 C.F.R. § 416.1123(b)(1). By replacing 20 C.F.R. § 416.1120 with 20 C.F.R.

§ 416.1123(b)(1), the Secretary announced her intention to consider the amount of money to which beneficiaries were entitled rather than the amount they received as income. Therefore, under the new regulation, a Title II beneficiary's income for the purpose of determining SSI eligibility includes the amount being withheld to recoup the prior Title II overpayments. This is a major policy reversal unaccompanied by any change in the underlying SSI statute. The current Secretary, in his arguments before this Court, justifies the change with two arguments: 1) recipients are benefitted by the withheld funds in that they are repaying a legal debt; and 2) the regulation is necessary to stem the flow of funds from one benefit program to another.

### III. ANALYSIS

The question before this Court, then, is whether the new regulation, 20 C.F.R. § 416.1123(b)(1), is valid and consistent with recent amendments to the Social Security Act and does not violate the Equal Protection Clause of the United States. Although similar cases have been decided by other district and circuit courts, the issue is one of first impression in this circuit; thus, this Court is not bound by precedent. When presented with both statutory and constitutional grounds for review, a court should consider the statutory claim before the constitutional one. *Califano v. Yamasaki,* 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979); *United States v. C.I.O.,* 335 U.S. 106, 110, 68 S.Ct. 1349, 1351, 92 L.Ed. 1849 (1948); *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (concurring opinion). Therefore, this Court will consider the statutory claims before considering plaintiffs' equal protection argument.

### A. Statutory Language: The Word "Received"

Plaintiffs and defendant argue differing interpretations of the word "received" in 42 U.S.C. § 1382a(a)(2)(B). The statute defines unearned income as

[A]ny payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and

pensions, workmen's compensation payments, old age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits.

Plaintiffs argue that the legislature intended "received" to mean the actual receipt of money in hand rather than constructive receipt. The interpretation of individual words in a statute is a difficult task. This Court is guided by the Supreme Court's rule of interpretation which is that "[i]n matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of the words employed." *United States v. New England Coal and Coke Company*, 318 F.2d 138, 142 (1st Cir.1963) (quoting *Flora v. United States*, 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958)).

▪ The Secretary argues that this Court need not engage in statutory interpretation but rather should defer to the Secretary's analysis. Such a standard must be rejected as inappropriate in this situation. This Court is never obliged to "rubber stamp" the Secretary's interpretation of a regulation. *Mayburg v. Secretary of Health and Human Services*, 740 F.2d 100 (1st Cir.1984) (citing *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1964)); *see also Bureau of Alcohol, Tobacco, and Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) (court reviewing agency interpretation of law should not "slip into judicial inertia"). Contrary to the Secretary's contention that this Court is bound to uphold his action regardless of its merits, the length of time between the statute and the regulation's promulgation results in a low level of deference. *General Electric Co. v. Gilbert*, 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976) (administrative interpretation of a statute many years after enactment and contradictory to its previous interpretation is entitled to little weight).

The Secretary's proposed standard is especially inappropriate when the Secretary's regulation reverses a regulation promulgated at the time the statute was enacted. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964) ("Department's current interpretation, being in conflict with its initial position, is entitled to considerably less deference").

Given the present situation, the First Circuit in *Mayburg* provides this Court with a framework for analyzing an administrative interpretation. Judge Breyer noted in *Mayburg* that a court "may still infer from the particular statutory circumstance an implicit congressional instruction about the degree of respect or deference they owe the agency on a question of law.... They might do so by asking what a sensible legislator would have expected given the statutory circumstances." *Mayburg*, 740 F.2d at 106 (citing *Chevron v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

▪ Applying a *Mayburg*-type "sensible legislature" standard, the Second and Fifth Circuits, in ruling on essentially identical cases, rejected arguments that the word "received" in section 1382a(a)(2)(B) should be interpreted to invalidate 20 C.F.R. § 416.1123(b). *Robinson v. Bowen*, 828 F.2d at 71; *Lyon v. Bowen*, 802 F.2d 794 (5th Cir.1986). The *Lyon* court noted that the word "received" is used only in subsection (a)(2)(B) and not in other subsections where income might as likely be constructively, but not actually, received by the beneficiary. For example, section 1382a(a)(2)(E) includes "gifts (cash or otherwise), support and alimony payments, and inheritances" as income without using the word "received." Judge Weinfeld writing for the district court in *Robinson* concluded that:

> [it was] not logical to infer that Congress' use of the term 'received' in subsection (a)(2)(B) was intended to insure that those particular payments would not be included in the calculation of 'earned income' unless they were actually received in hand by an individual in the literal sense of the word.

*Robinson*, 650 F.Supp. at 1495, *aff'd, Robinson v. Bowen*, 828 F.2d 71 (2d Cir.1987).

This Court agrees with the district court in *Robinson:* there is strong evidence that the word "receive" is not to be given a meaning which would make the subsections inconsistent.

Further, this is not a case, as plaintiffs claim, in which the Secretary is considering funds actually available for plaintiffs' use. The amount withheld is being used to repay plaintiffs' overpayment. Plaintiffs do not dispute the Secretary's judgment that they were "not without fault" in receiving overpayments. Therefore, they are obligated to repay the overpayment. Nor is the Secretary arguing that their income is increased because of the earlier overpayment. Such an argument would impermissibly impute money received in the past as current income. *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982) (reimbursement for prior medical expenses not countable as income). Rather, the Secretary considers the amount withheld as overpayment to be income used to pay back a debt, which is explicitly permitted by statute. The Secretary is not acting wrongly by counting overpayments as income.

Thus, plaintiffs' analogy to cases in which courts considered income unavailable to beneficiaries in assessing their need for SSI purposes is irrelevant. *McDermott v. Schweiker,* 612 F.Supp. 202 (W.D.N.Y. 1985); *Usher v. Schweiker,* 666 F.2d 652 (1st Cir.1981); *Usher v. Secretary of Health & Human Services,* 721 F.2d 854 (1st Cir.1983). In *McDermott,* a case cited by the plaintiffs, the court found that the Secretary could not consider the garnished income of a child's stepfather in determining the child's eligibility for SSI benefits because the garnished income was not available for the child's use. The court held that, while deeming the stepfather's income was permissible, the portion of that income being garnished could not be counted as income available to the child. The court further held that because the garnished funds were not available to provide for food, clothing, or sheltering for the child, they could not be counted as income. Plaintiffs' situation is different. Unlike the child in *McDermott,* the reduction in their income was a direct result of their being "not without fault" in receiving an overpayment. The child in *McDermott* had no control over the circumstances relating to the garnishment. Further, plaintiffs' withheld funds are being used to their benefit in that the funds are repaying a debt to Title II incurred by the plaintiffs. The two situations are thus different.

Finally, plaintiffs misinterpret the holding of *Usher* in stating that only income available for actual use can be considered in determining SSI benefits. In *Usher,* the First Circuit held that housing provided to the elderly by their children could be counted as imputed income. *Usher* does not help the plaintiffs. Its holding only strengthens the Secretary's argument in that it encourages this Court to see plaintiffs as benefitting from their withheld income. The *Usher* court wrote that income in kind, such as food, clothing, or shelter, is "actually available" even though it "cannot readily be converted into cash." The First Circuit stated that "when one receives [income in kind] one receives an actual benefit whether or not there is a market in which one might sell that benefit." *Usher,* 666 F.2d at 656. Applying the *Usher* doctrine, the portion of the plaintiffs' Title II benefits which are being withheld may be considered as an actual benefit to them, in that it is being used to pay a legal debt, "whether or not there is a market in which [they] might sell that benefit." *Id.* at 656.

## B. Congressional Intent: Competing Goals

■ Plaintiffs make two arguments that the regulation is inconsistent with Congressional intent. First, they claim that section 416.1123(b)(1) conflicts with legislative intent to the extent that it reduces SSI recipient incomes below the poverty line. The second, related claim, is that legislation recently enacted by Congress, 42 U.S.C. § 1383(b)(1)(B), limiting the amount of SSI overpayments deducted from SSI benefits to no more than 10% below the minimum subsistence level, applies equally to Title II overpayments. Both of these arguments were presented to, and rejected by, the

*Robinson* and *Lyon* courts. *See Robinson,* 828 F.2d 71; *Lyon,* 802 F.2d 794.

### a) Conflicting Intent

Plaintiffs argue that Congress' intent in enacting the SSI program was to provide an income for the aged, blind and handicapped. This is indisputable. The provision of benefits, however, cannot be the exclusive goal of a benefit-dispensing statute. The *Lyon* court noted that it was also Congress' intent to "prevent the dissipation of the SSI resources through neglect, abuse, or fraud." *Lyon,* 802 F.2d at 797. The Secretary's changing the method of calculating income was pursuant to this second goal of maintaining the integrity of the program. No aid can be distributed if the program's assets are dissipated through fraud and waste. The Secretary contends that not counting withheld Title II overpayments as income constitutes waste. Had Congress intended for the Secretary to distribute funds without consideration for the integrity of the program, it would certainly have included such language in the statute. Absent such language, this Court cannot infer such a destructive intent.

### b) The 10% Rule

Plaintiffs' second argument invoking Congressional intent is that 42 U.S.C. § 1383(b)(1)(B) should be inferred as applying to Title II as well as SSI. 42 U.S.C. § 1383(b)(1)(B) governs the withholding of SSI overpayments from SSI benefits. In 1984, Congress amended section 1382(b)(1) by limiting overpayments recouped from SSI beneficiaries to amounts which do not exceed the lesser of "(I) the amount of his or their benefit under this title ... for that month or (II) an amount equal to 10 percent of his or their income for that month...." 42 U.S.C. § 1383(b)(1)(B) (Section 2612 of the Deficit Reduction Act of 1984) (Supp. III 1985). The result of this was to establish an income floor for SSI recipients repaying an SSI overpayment. The statute makes no mention of repayments to Title II or any other benefit program. If any meaning is to be drawn from section 1383(b)(1)(B), it is that had Congress wished to regulate the recoupment of Title II overpayments, it could have done so. This Court cannot consider legislation regulating one program as applicable to another, albeit related, program unless so directed by Congress.

## C. Cross Program Recovery

Plaintiffs argue that section 416.-1123(b)(c) violates an overriding prohibition against cross program recovery. In its simplest form, cross program recovery is the withholding of income under one benefit program to recoup an overpayment from a different benefit program. The Congress protected SSI benefits from being assigned to pay debts to other programs or to private individuals or organizations by incorporating the anti-assignment provisions of the Title II program, 42 U.S.C. § 407, into the SSI program. 42 U.S.C. § 1383(d)(1). The anti-assignment provision states:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

In other words, SSI and Title II benefits are protected from seizure to pay debts.

Plaintiffs claim that 20 C.F.R. § 416.1123(b) results in Title II overpayments being deducted impermissibly from SSI benefits. They argue that by counting their gross rather than net incomes for the purposes of calculating their eligibility for SSI benefits, the Secretary is actually recouping their Title II debt by granting them less in SSI benefits. This is the converse of the Secretary's argument that considering only their gross income would result in SSI paying their Title II overpayments.

■ Confronted by the same "cross program recovery argument," the *Lyon* court distinguished the recoupment of overpayments from unlawful cross program recovery. *Lyon,* 802 F.2d at 799. It did so

by comparing section 416.1125(b) to an unrelated but analogous statutory provision, 42 U.S.C. § 1320a–6, regarding recapture of windfalls. That statute states in the case of a delay in providing Title II benefits, any resulting increase in SSI benefits may be deducted from Title II benefits when these benefits resume. This is to prevent the claimant from being paid twice by the same program. The court wrote "what is relevant about section 1320a–6 for our purposes is that, like 20 C.F.R. § 416.1123(b), it does not authorize cross program recovery *per se* but achieves the same results by permitting an integrated method of accounting." *Lyon*, 802 F.2d at 800 (emphasis in original). The integrated method of accounting used by section 416.-1123(b) is less intrusive than that in section 1320a–6. Rather than actually deducting Title II overpayments from SSI benefits, the Secretary merely considers the total amount of benefits received by an applicant in assessing the amount of his SSI benefits. This Court agrees with the Fifth Circuit's analysis that this does not constitute cross program recovery, but rather is an acceptable administrative measure to prevent waste like the one authorized by section 1320a–6. It is not enough to conclude, as did the District Court in *Healea v. Bowen*, No. 86–3060, slip op. (C.D.Ill. May 4, 1987), *on appeal*, No. 87–2300 (7th Cir.1987), when interpreting 20 C.F.R. § 416.1123(b) that "[i]ncreasing plaintiff's SSI payments will have no effect on her obligation to the Title II trust account. It will not waive the recovery of the prior overpayment." *Healea*, slip op. at 9. The Secretary is empowered specifically to recoup the overpayments through withholding current benefits. He need not rely on the beneficiary's sense of obligation to the program.

By agreeing that the Secretary is authorized to implement a regulation which considers income unavailable to SSI beneficiaries in calculating the amount of benefits they are eligible to receive, this Court does not ignore the human dimensions of the situation. This Court would find it difficult to choose between what the *Lyon* court identified as the two competing aims of the SSI program, "the maintenance of the aged and disabled or the enforcement of program regulations." *Id.* at 798. The unmitigated effect of the regulation under consideration can be harsh. The effects of the regulation are softened though by the provisions of 20 C.F.R. § 404.502(c) which provide that at the Secretary's discretion the amount of overpayments recouped can be reduced even if the recipient is not without fault. The Secretary may consider the beneficiary's ability to pay and the extent to which "the recipient has sufficient funds to meet her ordinary and necessary living expenses." *Robinson*, 650 F.Supp. at 1501. The recoupment can be lowered to as little as $10 per month. The effect of section 404.502(c) is to mitigate any over-harsh result of the application of the regulation.

## D. Equal Protection

Plaintiffs' final argument is a constitutional claim that the regulation is violative of Equal Protection in that it creates two classes of SSI recipients. Both classes, they claim, consist of persons who receive benefits under both the SSI program and at least one of the programs described in 42 U.S.C. § 1382a(a)(2)(B). Persons in the first class are those who received an SSI overpayment. Persons in the second class are those who received an overpayment from another benefits program. Plaintiffs contend that while persons in the first category are guaranteed a monthly income not less than 10% below SSI standards, persons in the second class have no guaranteed minimum income. In reviewing an equal protection challenge to a statute, this Court is bound to consider the United States Supreme Court's injunction that:

[T]he equal protection obligation imposed by the Due Process Clause of the Fifth Amendment is not an obligation to provide the best government possible.... Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary has a duty to intervene in the democratic process, this Court properly exercises only a limited review power over Congress, the appropriate representative body through which

the public makes democratic choices among alternative solutions to social and economic problems.... At the minimum level, this Court consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives.

*Usher v. Schweiker*, 666 F.2d at 658 (*citing Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981)).

 Confronted with an equal protection challenge to section 1416.1123(b), Judge Weinfeld in *Robinson* rejected the claim in a clear, scholarly and detailed fashion. *Robinson*, 650 F.Supp. at 1501, *aff'd, Robinson v. Bowen*, 828 F.2d 71 (2d Cir.1987). This Court agrees with his analysis. In sum, Judge Weinfeld noted that section 1416.1123(b) meets the requirements of Equal Protection in that the classification advances a legitimate goal in a rational fashion. 20 C.F.R. § 416.1123(b) was designed to prevent one benefit program from subsidizing another. It was promulgated in 1982, two years before Congress instituted 42 U.S.C. § 1383(b)(1)(B) limiting the recoupment of SSI payments from SSI beneficiaries to 10% of the beneficiary's income. Unlike section 416.1123(b) which regulates inter-program income allocation, section 1383(b)(1)(B) is free from the problems of cross program subsidization that section 416.1123(b) was designed to prevent.

It is perfectly rational, then, for the two to coexist. Each serves a different function. While it would be possible for Congress to create a 10% limit for those receiving benefits from two different programs, the fact that they have not done so does not indicate a breach of the Equal Protection Doctrine:

> [R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.

*Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted).

Thus, although section 1383(b)(1)(B) and 20 C.F.R. § 416.1123(b) may appear to result in disparate treatment of Title II beneficiaries, the result is actually a rational allocation of governmental resources achieved without invidious discrimination. This Court believes it is rational for Congress to have established an income floor for those repaying SSI overpayments but not those, like the plaintiffs, repaying Title II overpayments. Congress need not treat every group identically in order to comply with the Equal Protection Doctrine.

## IV. CONCLUSIONS

The Secretary's action is consistent with Congressional intent expressed in the Social Security Act. For the reasons stated above, plaintiffs' motion for summary judgment is DENIED. Defendant's motion for summary judgment upholding the validity of 20 C.F.R. § 416.1123(b) and denying plaintiffs' injunctive relief and recalculation of their SSI eligibility, is ALLOWED. Consequently, plaintiffs' motion for class certification is rendered moot.

IT IS SO ORDERED.