**Sarah E. HEALEA, Plaintiff–Appellee,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellant.**

**No. 87–2300.**

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1988.

Decided Oct. 5, 1988.

Donald T. McDougall, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellant.

John R. Porter, Jr., Prairie State Legal Services, Inc., Bloomington, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS and COFFEY, Circuit Judges.

BAUER, Chief Judge.

Sarah E. Healea is a 69–year–old widow who, in 1976, began receiving widow's insurance benefits from the Social Security Administration (SSA) under Title II of the Social Security Act (the Act). In October, 1982, Mrs. Healea applied for and eventually received Supplemental Security Income (SSI) pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, to augment her Title II benefits. On August 10, 1984, an Ad-

---

ministrative Law Judge (ALJ) determined that the SSA had overpaid Mrs. Healea $1,419.40 in widow's benefits in 1978, 1979, and 1980. The ALJ further concluded that because Mrs. Healea was "not without fault," the SSA could not waive the overpayment. As a result of the ALJ's decision, in October, 1984, the SSA began withholding $40 per month from Mrs. Healea's widow's benefits to recover the previous overpayment.

Since 1982, the SSA has considered the income Mrs. Healea has received from her widow's benefits in computing the monthly amount of SSI granted to her. But when the SSA reduced the widow's benefit payments in 1984, there was no corresponding increase in her monthly SSI payment. Thus, in effect, when the SSA calculated Mrs. Healea's entitlement to SSI benefits, it continued to count as income the money withheld by the SSA to recover the Title II overpayments. The reason for this is the Secretary of Health and Human Service's (the Secretary) regulation 20 C.F.R. § 416.1123(b)(1), which states:

*Amount considered as income.* We may include more or less of your unearned income than you actually receive. (1) We include more than you actually receive where another benefit payment (such as a social security insurance benefit) ... has been reduced to recover a previous overpayment....

The question on appeal is whether this regulation, which allows the Secretary to count withheld Title II payments as income for purposes of computing SSI payments, violates section 1382a(a)(2)(B), 42 U.S.C.

§ 1382a(a)(2)(B) (1986). The district court held that the regulation did violate the statute. Section 1382a(a)(2)(B) defines earned and unearned income for purposes of determining SSI eligibility and calculating the amount of assistance. Under this section, unearned income is, among other things,

any payments *received* as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits ...

42 U.S.C. § 1382a(a)(2)(B) (emphasis supplied).[1] We reverse.

In determining the validity of the Secretary's regulation, we first focus on the language of the statute itself. If it is clear and unambiguous, we must accept "the strong presumption that Congress expresses its intent through the language it chooses," *I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987), and this intent can only be rebutted by a "'clearly expressed legislative intention' contrary to that language." *Id.* (citations omitted). Mrs. Healea contends, and the district court held, that the term "received" in section 1382a(a)(2)(B), by its plain and ordinary usage, means *actually* received.[2] She argues that because the withheld Title II benefits are not within her possession or control, she has not "received" those benefits. Moreover, Mrs. Healea suggests that in the context of other welfare legislation, the usage of "received" generally means "actually re-

---

1. Section 1382a(a)(2) reads in relevant part:
   (2) unearned income means all other income, including—
       (A) support and maintenance furnished in cash or kind;

       .   .   .   .   .

       (B) any payments received as an annuity, pension, retirement, or disability benefit including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits;
       (C) prizes and awards;
       (D) the proceeds of any life insurance policy to the extent that they exceed the amount

expended by the beneficiary for purposes of the insured individual's last illness and burial or $1,500, whichever is less;
       (E) gifts (cash or otherwise), support and alimony payments, and inheritances; and
       (F) rents, dividends, interest, and royalties.

2. More precisely, the district court held that "received" should be defined by the "availability of income." Relying on *Jackson v. Schweiker,* 683 F.2d 1076, 1082 (7th Cir.1982), the court concluded that the withheld Title II benefits should not be counted as income "received" because it is not available for the purchase of food, clothing and shelter—the purpose of SSI.

ceived." *See, e.g., Philbrook v. Glodgett,* 421 U.S. 707, 719, 95 S.Ct. 1893, 1901, 44 L.Ed.2d 525 (1975) ("received unemployment compensation" must mean actual receipt of the benefit, not merely eligibility for or entitlement to the payment); *Wasservogel v. Blum,* 54 N.Y.2d 100, 444 N.Y. S.2d 612, 613, 429 N.E.2d 131, 132 (1981) (SSI recipients do not "receive" SSI if that federal payment has been withheld to recoup an overpayment); *Summy v. Schwieker,* 688 F.2d 1233, 1235 (9th Cir. 1982) (Veteran's Administration reimbursement "for expenditures previously made over which there was little control and which could not have been used to meet the 'basic needs for food, clothing, and shelter,'" is not income for SSI purposes).

Although Mrs. Healea's interpretation of section 1382a(a)(2)(B) is quite supportable, we cannot conclude that the statute's plain language is so clear and unambiguous that it invalidates the Secretary's regulation. Indeed, two circuit courts have interpreted the statute differently than Mrs. Healea. *See Robinson v. Bowen,* 828 F.2d 71 (2d Cir.1987); *Lyon v. Bowen,* 802 F.2d 794 (5th Cir.1986); *accord, Slosek v. Secretary of Health and Human Services,* 674 F.Supp. 944 (D.Mass.1987); *but see Martin v. Bowen,* 694 F.Supp. 718 (N.D.Cal.1988). In concluding that section 1382a(a)(2)(B) does not preclude considering withheld disability benefits as income "received," those courts reasoned that in other subsections of the statute, Congress listed similar examples of income without using the word "received" and since Congress did not re-quire actual receipt of these other types of income, it did not intend to require *actual* receipt of the benefits described in section 1382a(a)(2)(B) either. As the Fifth Circuit explained,

> [h]ad Congress intended to impose a condition of receipt on subsection (a)(2)(B) payments, we believe it would have imposed such a requirement in the other subsections as well. The absence of any mention of receipt in other subsections leads us to believe that the term "received" imposes no special conditions on disability insurance benefits and serves merely as a grammatical link between "payments" and the descriptive list of benefits which follows.

*Lyon,* 802 F.2d at 798.

Given the conclusions of the Second and Fifth Circuits, we must reject Mrs. Healea's contention that the language of section 1382a(a)(2)(B) plainly and clearly forbids the Secretary from counting the amount of withheld disability benefits as received income. Although Mrs. Healea's interpretation of the statute is certainly reasonable, and possibly even better than these courts' and the Secretary's, we cannot agree that the plain language of the statute clearly and unequivocally dictates her construction.

Because section 1382a(a)(2)(B) is ambiguous, we must examine the reasonableness of the Secretary's regulation in light of the section's legislative history.[3] The district court noted correctly that the preeminent purpose of SSI is to provide minimal feder-

---

**3.** Ordinarily, when the intent of Congress on a specific issue is ambiguously expressed in a statute, "the question for the court is whether the agency's answer is based on a permissible construction of the statute.... Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron USA Inc. v. Natural Resources Defense Council Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In this case, however, the Secretary's regulation does not deserve the degree of deference normally granted to its interpretive regulations. The Secretary promulgated the 1982 regulation at issue nine years after Congress enacted the statute. Moreover, this 1982 regulation completely reversed the Secretary's nine-year consistent policy of not counting with-held payments as income received. In other words, in 1982 the Secretary used its authority as the administrator of SSI to change the nature of the program without any corresponding change in the law. "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Cardoza–Fonseca,* 107 S.Ct. at 1221 n. 30. (quoting *Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981)). *See also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Contemporaneous constructions of a statute by an agency carries persuasive weight because of its presumed greater awareness of congressional intent; later interpretations are entitled to much less weight.

al assistance to the aged, blind, and disabled—those most in need of a guaranteed income. Sen.Rep. No. 92–1230, 92d Cong., 2d Sess. (1972). Thus, Congress intended to create a safety net for the neediest to ensure that they can afford basic food, clothing, and shelter. In addition to this overriding concern, however, Congress also intended to protect the fiscal solvency of SSI and other welfare programs. Congress demonstrated its concern for maintaining the fiscal integrity of the program by enacting section 1383(b), which allows the Secretary to deduct from SSI recipients previous SSI overpayments, although recovery is limited to ten percent of the beneficiary's monthly income in any given month. 42 U.S.C. § 1383(b)(1)(B).[4] Congress must have known that the allowance of such a recovery would result in an SSI recipient falling below the SSI minimum benefit floor. In other words, the amount of income available to the beneficiary for food, shelter and clothing might be reduced by as much as ten percent. Section 1382a(a)(2)(B), however, also evidences Congress' intent that SSI recipients should not have to survive on incomes more than ten percent below the SSI standard. *Robinson* 828 F.2d at 73 (Oakes, J. dissenting).

The effect of the Secretary's regulation as applied to this case is not materially different from section 1383(b). Rather than reducing a beneficiary's monthly SSI payments to recover SSI overpayments, the Secretary's regulation lowers Mrs. Healea's monthly SSI income by including in the calculation of monthly SSI payments the *Title II* overpayments. In both cases, the result is the same: an SSI recipient will have her monthly income reduced below the minimum-income floor created by Congress. Since Congress expressly mandated the result in one instance, we can not conclude that the Secretary's regulation allowing a similar result in another case is unreasonable—at least to the extent that it implicitly incorporates the ten percent limitation imposed by Congress in section 1383(b). Without this limitation, the regulation would allow the Secretary wide discretion to control the amount of SSI monthly payments affected by this regulation.[5] The possibility that the Secretary's regulation could reduce the SSI recipient's income by more than ten percent would defeat Congress's goal of guarantying that the neediest Americans have sufficient funds to provide for their basic care. Thus, we read the ten percent restriction in section 1383(b) as placing a ceiling, absent fraud or willful misrepresentation, on the Secretary's ability to lower an SSI recipient's monthly benefits.

---

4. Section 1383(b) provides in pertinent part:

(b) *Overpayments and underpayments; adjustment, recovery, or payment of amounts by Secretary.*

(1)(A) ...

(B) The Secretary (i) shall make such provisions as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment; if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter; and (ii) shall in any event make the adjustment or recovery (in the case of payment of more than the correct amount of benefits), in the case of an individual or eligible spouse receiving benefits payments under this subchapter ... in amounts which in the aggregate do not exceed (for any month) the lesser of (I) the amount

of his or their benefit under this subchapter for that month or (II) an amount equal to 10 percent of his or their income for that month ... unless fraud, willful misrepresentation, or concealment of material information was involved on the part of the individual or spouse in connection with the overpayment, or unless the individual requests that such adjustment or recovery be made at a higher or lower rate and the Secretary determines that adjustment or recovery at such rate is justified and appropriate.

5. The Secretary also has promulgated a hardship provision, which tempers the pain and harshness of the Secretary's regulation. 20 C.F.R. § 404.502(c). This provision allows the Secretary to reduce the amount of withheld Title II payments upon a showing of harshness by the beneficiary. In Mrs. Healea's case, the Secretary reduced the amount of monthly Title II payments withheld from $40 to $20. This regulation, however, is solely discretionary and it does not apply to income withheld from other sources besides Title II of the Act.

Given the dual legislative purposes of SSI, the Secretary's regulation is not unreasonable. We reiterate, however, that our holding construes the regulation in light of section 1383(b) and restricts the Secretary's authority to count withheld Title II benefits as income to those instances in which the SSI recipient's monthly income will not be reduced by any more than ten percent. This result provides the Secretary with the tools necessary to ensure the integrity of the public fisc without severely undermining Congress's primary goal of providing a minimum income to those most in need. In this way the competing goals of the SSI statute are maintained.

For the foregoing reasons, the district court is reversed. Because the record does not clearly reflect whether the Secretary's action has reduced Mrs. Healea's SSI benefits by less or more than ten percent, we also remand this case. Circuit Rule 36 shall not apply.