**Velma MARTIN, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Defendant–Appellee.**

No. 92–15137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 22, 1992.

Decided Oct. 5, 1992.

Gill Deford, National Sr. Citizens Law Center, Los Angeles, Cal., Evelyn R. Frank, Legal Aid Soc. of Alameda County, Oakland, Cal., Paul Rose, Legal Aid Soc. of Alameda County, Hayward, Cal., for plaintiff-appellant.

John S. Koppel, U.S. Dept. of Justice, Washington, D.C., George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., William Kanter, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before: CANBY, REINHARDT, and LEAVY, Circuit Judges.

CANBY, Circuit Judge:

Velma Martin, on behalf of herself and other Supplemental Security Income (SSI) claimants, contends that 20 C.F.R. § 416.-1123(b)(1) and 42 U.S.C. § 1383(b)(1)(B) violate their rights to equal protection. We disagree.

## BACKGROUND

As the widow of a former railroad employee, Martin became eligible to receive monthly survivor's benefits from the Railroad Retirement Board (Board) in December 1978. In May 1985, the Board informed Martin that she had been overpaid during the first four years by $8,528.92. According to the Board, this overpayment stemmed from Martin's failure to report additional income. Consequently, the Board informed Martin that her entire monthly benefit of $268.16 would be suspended for 34 months. This withholding reduced Martin's monthly income to about $386, the amount she received in Social Security Retirement Benefits.

Martin petitioned the Board for a waiver of the repayment. Faulting Martin for the overpayment, the Board denied the petition. In January 1987, she applied to the Social Security Administration (SSA) for SSI benefits to supplement her Social Security Retirement Benefits. After determining that Martin's income exceeded the maximum income permissible for SSI eligibility, the SSA denied her application. In computing Martin's income, the SSA, acting in accordance with 20 C.F.R. § 416.1123(b)(1), counted the amounts withheld by the Board to recover overpayments.

After exhausting her administrative remedies, Martin brought this action in district court on behalf of herself and a circuit-wide class of plaintiffs. The complaint alleged that the regulation violated both the language and intent of Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and that it deprived the plaintiffs of equal protection. The district court initially enjoined the regulation on statutory grounds, and declined to address the equal protection claim.

We vacated the injunction and remanded for further proceedings in *Martin v. Sullivan*, 932 F.2d 1273 (9th Cir.) (amended opinion), *cert. denied*, — U.S. —, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991) (*Martin I*). We held that income may be used to determine SSI eligibility even if the claimant has not actually received it. *Id.* at 1275–78. In addition, we rejected the plain-

tiffs' argument that, because Congress limited the recovery rate of overpaid SSI benefits to 10 percent of the debtor's monthly income, Congress also must have intended similarly to limit the extent to which withholding under other programs could affect the amount of SSI benefits received. *Id.* at 1278. Finally, we noted that the Secretary had a policy to permit reduced withholding, and that Martin had been offered that option. *Id.*

After unsuccessfully petitioning for certiorari, the plaintiffs returned to district court to pursue their constitutional claim. They moved for summary judgment, and the Secretary filed a cross-motion for dismissal. The district court granted the motion to dismiss, and the plaintiffs appealed.

## DISCUSSION

Congress enacted the SSI program to provide "a subsistence allowance, under federal standards, to the Nation's needy aged, blind, and disabled." *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981); *see* 42 U.S.C. §§ 1381–1383c. To be eligible for SSI benefits, a claimant's income must not exceed certain levels. 42 U.S.C. § 1382(a). The Social Security Act defines the "income" of SSI claimants as including both "earned income" and "unearned income." 42 U.S.C. § 1382a(a). Section 1382a(a)(1) lists the items constituting "earned income," and section 1382a(a)(2), in defining "unearned income," provides:

> unearned income means all other income, including—
>
> .    .    .    .    .
>
> (B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits.

The regulation central to this appeal provides that the funds listed in section

1382a(a)(2) as "unearned income" may be counted as follows:

(a) *When we count unearned income.* We count unearned income at the earliest of the following points: When you receive it or when it is credited to your account or set aside for your use. We determine your unearned income for each month ...

(b) *Amount considered as income.* We may include more or less of your unearned income than you actually receive.

(1) We include more than you actually receive where another benefit payment (such as a social security insurance benefit) (see § 416.1121) has been reduced to recover a previous overpayment. You are repaying a legal obligation through the withholding of portions of your benefit amount, and the amount of the debt reduction is also part of your unearned income. *Exception:* We do not include more than you actually receive if you received both SSI benefits and the other benefit at the time the overpayment of the other benefit occurred and the overpaid amount was included in figuring your SSI benefit at that time.

20 C.F.R. § 416.1123.

In contrast, the statutory provision dealing with recoupment of SSI overpayments generally limits withholding to an amount equal to 10 percent of the claimant's income for that month. 42 U.S.C. § 1383(b)(1)(B). The statute, however, places no limit on the reduction of SSI benefits when a claimant is guilty of fraud, willful misrepresentation, or concealment of information. *Id.* The plaintiffs maintain that the interaction of the statutory provision with section 416.1123(b) results in an equal protection violation, because one group of overpaid SSI claimants (absent fraud) is guaranteed 90 percent of the SSI standard while the other overpaid claimants are not.

■ The principle of equal protection applies to the federal government through the due process clause of the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 498–500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884 (1954). Unless the government utilizes a suspect classification or draws distinctions bearing upon a fundamental right, the challenged classification need only be rationally related to a legitimate government purpose. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–76, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980). Because the classifications here do not discriminate on the basis of a suspect classification or inhibit the exercise of a fundamental right, we review them under the rational basis standard. *See id.*

## Validity of the Classification

■ The plaintiffs contend that the two classes are similarly situated, because both contain overpaid beneficiaries who receive support from SSI and at least one other program. They argue that the government accordingly must treat them similarly, and guarantee plaintiffs payments to bring them up to 90 percent of the SSI standard enjoyed by recipients who are subject to recoupment of SSI overpayments. We reject this contention, because we conclude that there is a rational basis for the government's differentiation between the two groups.

The plaintiffs characterize the government's statutory interest as that of ensuring that eligible persons receive sufficient income to meet their subsistence needs. This statutory interest, they argue, is disserved by a rule that reduces actual income received by the plaintiffs to a level far below that established by the government as necessary for subsistence. The plaintiffs' view of the government's statutory interest is too narrow, however. The goal of meeting the recipients' subsistence needs is tempered by a competing interest in preserving "the fiscal solvency of the SSI program by protecting its coffers from dissipation through neglect, abuse and fraud." *See Martin I,* 932 F.2d at 1278; *see also Cervantez v. Sullivan,* 963 F.2d 229, 235 (9th Cir.1992). This combination of purposes animates the entire benefit scheme. *See Martin I,* 932 F.2d at 1278 ("Congress had dual policy concerns in

mind when it implemented the SSI program").

The plaintiffs contend that, even if fiscal concerns are one of the legitimate governmental interests behind the SSI program, the classification in issue does not serve that interest. The plaintiffs see no reason to treat recipients subject to recoupment from non-SSI programs differently from those subject to recoupment of SSI benefits. In their view, rational treatment of the two groups would be identical.

We cannot accept this argument, because it ignores crucial distinctions between the position of the two groups that lead to the differences in their treatment under the statute and the regulation, respectively. Section 1383(b)(1)(B) of the statute applies to the recoupment by SSI of its own funds previously overpaid. In contrast, section 416.1123(b) of the regulations deals with recoupment by other agencies or parties under different programs. The Secretary of Health and Human Services is not in a position to control the actual rate of recoupment exacted by other agencies or, indeed, by private pension programs or the states (as in overpaid workers' compensation, for example). If the Secretary were required, as plaintiffs urge, to consider as "unearned income" only that portion of the recoupments that did not exceed ten percent of the SSI income standard, then SSI would have to step in to pay living expenses of recipients that would have been paid by the other program but for the overpayment and recoupment. The consequence, as we said in *Martin I*, "is that SSI funds will be used to partially subsidize a claimant's debt to an outside program whenever the rate of benefits being withheld exceeds 10 percent." *Martin I*, 932 F.2d at 1278. The recipient who is overpaid by another program that recoups by 100% deductions until the overpayment is discharged would receive more in total income, and more from SSI, than would a comparable recipient whose pension was never overpaid.

In the case of SSI recoupment under the statute, that situation cannot occur. SSI is recouping its own funds, not supplanting another program's funds interrupted by recoupment. Moreover, the debt to SSI is reduced by no more than the ten percent of the income standard withheld from each month's benefits. If the recipient remains on SSI until the entire payment is recouped, the recipient has received the same income, and the same amount from SSI, as a comparable recipient who was never overpaid by SSI.

We conclude, therefore, that the different treatment of the two classes is rationally related to Congress's interest in preserving the fiscal integrity of the SSI program. The classification consequently does not violate the equal protection component of the Fifth Amendment. The only other courts to have considered the issue have reached the same conclusion. *Szlosek v. Secretary of Health & Human Servs.*, 674 F.Supp. 944 (D.Mass.1987), aff'd per curiam, 861 F.2d 13 (1st Cir.1988); *Robinson v. Bowen*, 650 F.Supp. 1495 (S.D.N.Y.), aff'd, 828 F.2d 71 (2d Cir.1987). In the area of economics and social welfare, a classification "does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). It is enough that there are "plausible reasons" supporting the distinction in treatment. *Fritz*, 449 U.S. at 179, 101 S.Ct. at 461. Such reasons exist here.

In so ruling, we do not underestimate the grim prospect faced by plaintiffs who must find ways of surviving on an actual income well below that thought necessary for reasonable subsistence. One way of ameliorating the burden for some is to seek and obtain a reduced rate of recoupment from the overpaying program. *See Martin I*, 932 F.2d at 1278. For others, the hardship remains severe. Their relief must come, however, from legislative decisions by Congress or the Secretary; the Constitution does not command it in the circumstances of this case. *See Lipscomb v. Simmons*, 962 F.2d 1374, 1382 (9th Cir.1992) (en banc) ("courts have ignored individual anomalies

and have inquired only whether there is a rational basis for the program viewed as a whole").

## CONCLUSION

The judgment of the district court is AFFIRMED.

REINHARDT, Circuit Judge, concurring in the judgment.

I agree that we must review this case under a rational basis standard. I write separately because I disagree that the basis the government has advanced is rational. I concur because the government has adopted its fallacious reasoning from our prior decision in this case, *Martin v. Sullivan*, 932 F.2d 1273 (9th Cir.1990) (as amended), *cert. denied,* —— U.S. ——, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991) (*Martin I*).

In *Martin I* we found that 20 C.F.R. § 416.1123(b)(1) does not violate the language or intent of Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq. Id.* Our decision permitted the Social Security Administration (SSA) to deny Supplemental Security Income (SSI) benefits to Velma Martin, forcing her to live on $386 per month. In addition to her $386 per month, Martin has a pension from the Railroad Retirement Board (Board) that our decision permitted the SSA to calculate as "income" under 20 C.F.R. § 416.1123(b)(1) despite the fact that this income was, as far as Martin was concerned, invisible, inaccessible, indeed non-existent, in that it was being withheld from her to make up a prior overpayment by the Board. As we construed the applicable statute and regulations, when a debt is owed to a benefit program other than SSI, the debtor may be ineligible for SSI entirely, because reduction of the debt constitutes phantom income. 42 U.S.C. § 1383(b)(1)(B)(ii); 20 C.F.R. § 416.1123(b)(1). But when the debt is owed to SSI itself, the debt reduction is not, for practical purposes, considered income—the debtor is guaranteed at least ninety percent of the regular SSI monthly benefit. 20 C.F.R. § 416.571. In *Martin I* we rejected Martin's argument that Congress must have intended the aged, blind, and disabled who owe debts to other benefit programs to be given enough money to feed, clothe, and shelter themselves at the minimum level necessary to keep body and soul together. *Id.* at 1278. Whether or not we should have reached that conclusion, the *reason* we gave for our holding was, in my view, patently erroneous. We said that if we accept Martin's argument, "SSI funds will be used to partially subsidize a claimant's debt to an outside program whenever the rate of benefits being withheld exceeds 10 percent." *Id.* On that basis, we overruled the district court and rejected her claim.

Martin now challenges the statute and its complementary regulation under the Equal Protection Clause. The government insists that its policies are rational. Relying on our earlier opinion, the government argues that if Martin's equal protection argument is upheld, SSI funds will "subsidize" her debt to the Board. The fact is, of course, that Martin must repay her debt to the Board whether she gets SSI benefits or not. The difference that SSI benefits would make to her is that she would be able to repay her debt while still being able to eat instead of while starving; or that she would be able to repay her debt while living in an apartment instead of on the street. The Board deducts the overpayment no matter what SSI pays. Thus, there is clearly no "subsidy" involved. Nevertheless, the statement the government relies on was not dictum. It formed the basis of our decision.

The "subsidy" argument is the *only* one the government advances to justify its policy. The government does not rely on the other arguments set forth in the majority's opinion. Counsel for the government was asked at oral argument whether any basis other than the "subsidy" contention exists for finding the policy rational. Counsel said that there was none. Because the government's argument is appropriate under *Martin I,* I am required to concur; nevertheless, I believe it to be without a rational basis.